### WALTENBERG v. WALTENBERG.

(Court of Appeals of District of Columbia.    Submitted April 7, 1924.    Decided May 5, 1924.)

No. 4047.

1. Divorce ⟨key⟩130—Evidence of cruelty held to authorize divorce a mensa et thoro.

Evidence *held* to establish a degree of cruelty, authorizing a divorce a mensa et thoro, under Code, § 966.

2. Divorce ⟨key⟩27(3)—When granted on ground of cruelty stated.

In absence of physical violence, to bring a case within Code, § 966, authorizing a divorce a mensa et thoro for cruelty, evidence must establish conduct creating a state of mind which, operating on the physical system, produces bodily injury.

Appeal from the Supreme Court of the District of Columbia.

Suit by Thelma Smith Waltenberg against Romaine G. Waltenberg. From a decree sustaining defendant's demurrer to the testimony, plaintiff appeals. Reversed, and cause remanded for further proceedings.

Edward Stafford, of Washington, D. C., for appellant.

A. L. Newmeyer and M. W. King, both of Washington, D. C., for appellee.

Before ROBB and VAN ORSDEL, Associate Justices, and MARTIN, Presiding Judge of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. Appellant, plaintiff below, filed a bill in equity in the Supreme Court of the District of Columbia, praying a divorce a mensa et thoro from defendant, her husband. When plaintiff submitted her testimony and rested her case, defendant demurred to the testimony by motion to dismiss the bill. From a decree sustaining the motion, this appeal was taken.

[1] It appears that the parties were married August 6, 1918. Later they separated, but resumed marital relations about March 1, 1921. In October of that year they bought a home in Washington, where they lived until February 6, 1922, the date on which plaintiff left her husband. The testimony discloses that defendant on two occasions

---

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

struck his wife in the face, on one occasion knocking her down; that on several occasions in the presence of other people he referred to his wife as "the servant in the house"; that defendant refused to converse with plaintiff or notice her; that when she asked him if she might buy a dress he replied, "No; he was not in the habit of buying clothes for servants;" that in the latter part of January, 1922, there were several days when he refused to order coal with which to heat the house; that plaintiff was compelled to send her baby elsewhere in order to protect its health; that the only fire in the house was in an open fireplace in the living room, made from boxes which defendant would bring home from the Bureau of Standards, where he worked; that on the last occasion, when defendant struck her and she told him that she would leave the house, he packed the silver in a suit case, put it in the cellar, and began nailing up the windows; that she went to the neighbors to 'phone her mother, and when she returned found the kitchen door locked; that, when defendant finally let her in, she found him nailing up every window and every door in the house; that he locked the front door and took the key; that she was let out when policemen came and compelled defendant to open the door; that she was not allowed to take anything with her, not even her clothes; that later she secured what little defendant saw fit to leave for her; that until the week before she left him she was without sleeping apparel, and was compelled to wear defendant's pajamas; that when she requested him to allow her to buy some clothes he replied that "he was not in the habit of buying clothes for servants"; and that "defendant was very cruel to her physically."

The single question is whether or not the foregoing testimony establishes a degree of cruelty which will sanction a decree for divorce. Section 966, D. C. Code, provides:

"A divorce from the bond of marriage may be granted only where one of the parties has committed adultery during the marriage: Provided, that in such case the innocent party only may remarry, but nothing herein contained shall prevent the remarriage of the divorced parties to each other: And provided, that legal separation from bed and board may be granted for drunkenness, cruelty, or desertion."

It is difficult to lay down any definite rule as to what constitutes cruelty within the provisions of this statute. It is clear, we think, that it is not necessary that the conduct be limited to such physical treatment as would endanger life or health. While there are two instances of assault in the present case, even this is not necessary, if other conditions are present, to bring the case within the statute. The conduct of the offending party, in the absence of assault, may be such as to make life intolerable, and thereby amount to such cruel treatment as to justify a decree of separation.

At common law, separation, on grounds of cruelty, could only be decreed where actual violence had been committed, which endangered life, limb, or health, or where the conditions were such as to create reasonable apprehension of such violence. In other words, the element of mental suffering and distress or injury, in the absence of violence or threatened violence, was excluded. That rule, however, no longer

prevails in this country. We have advanced beyond the rigors of the common law, which permitted a husband to whip his wife with a stick not larger than could be passed through the wedding ring.

[2] To bring the case within the statute, it is sufficient if the evidence, in the absence of physical violence, establishes conduct which creates a state of mind which operating upon the physical system produces bodily injury. The trend of state decisions in this country, touching upon the question of cruelty as a ground for divorce, is concisely stated in 19 Corpus Juris, 44, as follows:

"In determining what acts constitute cruelty authorizing a divorce, regard must be had, not only to the provisions of the statute, but also to the circumstances of each particular case, keeping always in view the character and condition of the parties, including their social position and refinement; and as the habits and dispositions of different married people vary so much, it is impossible to lay down any universal rule to control the determination of the question. However, mere want of congeniality, or incompatibility of temper, and the consequent wranglings of the parties, will not justify a charge of cruelty on the part of either; nor is jealousy, or overbearing conduct on the part of the husband, a cause for divorce. The acts, conduct, or causes must be grave and weighty. The conduct of one of the parties must at least be such as to render cohabitation intolerable to the other. And while actual bodily harm or apprehension thereof need not be shown, to justify granting a divorce on the ground of cruelty, yet there must have been such treatment as to destroy the peace of mind and happiness of the injured party, and to endanger the health or utterly defeat the legitimate objects of the marriage."

It appears, therefore, that the application of the statute in a given case must depend upon existing conditions. The habits and dispositions of individuals differ according to station, early training, environment, and education. Conduct on the part of one of the parties to the marriage relation, constituting cruelty toward the other, might amount to nothing more in some homes than the ordinary course of living, while in others it would constitute the very refinement of cruelty. It is for this reason that courts are unable to define definitely the term, but must be governed in applying it to the circumstances of the particular case, taking into consideration the apparent intelligence, refinement, temperament, and disposition of the parties. In some instances courts, most liberal in granting relief on grounds of cruelty, have held that among certain classes of people the exchange of blows is not detrimental to the uninterrupted continuance of the marriage relation.

In the present case it appears that defendant, evidently a man of intelligence and education, was working for the government in the Bureau of Standards at a salary of $225 per month; that the wife sang in a church choir, and, so far as the record discloses, is an intelligent and refined woman. Under these circumstances the degree of abuse imposed, to constitute cruelty, may be such as would be regarded of less importance under other circumstances; but in this instance we are convinced that the record discloses a course of harsh and inconsiderate conduct on the part of the defendant towards his wife which justifies the interposition of a court of equity to afford relief.

The decree is reversed, with costs, and the cause is remanded for further proceedings, not inconsistent with this opinion.