## TRICE v. TRICE.

(Court of Appeals of District of Columbia.
Submitted April 9, 1925. Decided
May 4, 1925.)

No. 4179.

Divorce ⟺130—Evidence of cruelty held insufficient to warrant divorce a mensa et thoro.

Evidence of cruelty *held* insufficient to warrant divorce a mensa et thoro, under Code, § 966.

Appeal from Supreme Court of District of Columbia.

Suit for divorce by Lydia May Trice against Wade H. Trice. Decree for plaintiff, and defendant appeals. Reversed and remanded, with directions to dismiss.

T. H. Patterson, J. A. Thompson, and Crandal Mackey, all of Washington, D. C., for appellant.

Campbell Howard and I. R. Richards, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District granting a divorce a mensa et thoro to the plaintiff, and awarding her the custody of the two children of the parties, with alimony.

The parties were married in 1904, and in February of 1923 the wife, refusing longer to live with her husband, filed her bill for divorce. In her direct testimony she stated that her married life had been unpleasant, "but was worse during last three years; that defendant was given to exhibitions of temper such as slamming doors and kicking chairs, cursing and swearing"; that on one occasion defendant "brandished his revolver in her presence," and that she was afraid he would do her bodily harm; that she thought he was running around with other women; that one night defendant told her he would throw her out of the window; that on another occasion, several years ago, she saw him, while on duty as a policeman, "talk to a red headed woman on the street"; that she objected to his visiting the home of a former policeman, because it was her belief that this man had been divorced by his wife on the ground of adultery; that there was no possibility of a reconciliation, although the defendant, "since the separation, had written her a letter asking her to become reconciled to him, but she had declined."

On cross-examination, plaintiff admitted "that the defendant had at all times during their married life brought his salary home to her and turned it over to her in its entirety, and that she gave him a small allowance for personal needs"; that defendant objected to her running bills or establishing credit at different stores; and that, at the time defendant inserted a notice in newspapers that he would not be responsible for debts contracted by any person other than himself, "he was still turning over his salary to her. * * * Plaintiff admitted that defendant had never actually brandished a revolver or threatened her with one; that what she termed 'brandishing a revolver' on the occasion referred to in her direct testimony was on one occasion when, after words with her, defendant suddenly put his hand in his hip pocket and drew out his handkerchief, plaintiff having thought his pistol was in that pocket; * * * that what she meant, on direct examination, to the effect that defendant once threatened to throw her out of the window, was on the occasion referred to defendant had returned from work and gone to bed, and she went into the room, and while there, defendant had said that he felt so wrought up, she made him feel like throwing her out of the window." Plaintiff further admitted that part of their domestic trouble was over their son; that plaintiff "had been nagging or complaining at defendant for 10 years about association" with a certain policeman; "that defendant during all their 19 years of married life had never struck her or laid violent hands on her in any way, and had never actually threatened her with violence."

The son, a lad of 18 years, testifying for the plaintiff, stated that his father was in the habit of cursing and swearing in the presence of his mother, and "was given to violent exhibitions of temper by slamming doors"; that his father charged him with staying out late at night; and that "his mother had objected to the father saying anything to him about it."

The only other testimony on behalf of the wife that need be noticed is found in a deposition by a Mrs. Pumphrey. The testimony of this witness may be summarized in her own language as follows: "Witness said it was not from Mr. Trice's (defendant's) talk; it was from his looks that caused her to go all to pieces and to fear him; that she did not believe he would do her bodily harm, but was afraid he would do Mrs. Trice bodily harm; that she never heard defendant utter any word indicating that he would do the

witness or Mrs. Trice bodily harm. 'It was the looks of the man.' * * * That all she had against Mr. Trice was his constant nagging and fussing; that what she called nagging was defendant failing ever to agree with his wife on anything in the way he did; * * * that the only two things which witness thought should entitle Mrs. Trice to a legal separation and custody of the children were Mr. Trice's looks and what the witness had described as nagging; that was all witness knew about the case."

The evidence for the defendant tended to show that he is a member in good standing of a church, bears an excellent reputation for morality, and is generally regarded as a man of kindly disposition and courteous demeanor. The former police officer, mentioned by the wife in her testimony, stated that he was not divorced from his wife but separated from her, and that the juvenile court, after due hearing, had held that his wife was not a proper person to have the custody and control of their infant children and had placed them in his control.

Testifying in his own behalf, defendant stated that his reason for inserting the newspaper notice was that his wife had become improvident and would contract bills without his knowledge and consent, and that it worried him to be in debt; that he had objected to the son running around with boys whose reputation for morals and deportment were not of the best. He further testified that he was ready to resume marital relations with the plaintiff.

"Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the Legislature. That body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution." Maynard v. Hill, 125 U. S. 190, 205, 8 S. Ct. 723, 726, 31 L. Ed. 654.

In this jurisdiction, there is but one ground for absolute divorce, adultery, but "legal separation from bed and board may be granted for drunkenness, cruelty, or desertion." Code, § 966. The ground for the present action is cruelty.

In Waltenberg v. Waltenberg, 52 Wash. Law Rep. 423, 54 App. D. C. 383, 298 F. 842, this court expressed the view that, in the absence of physical violence, a case will be brought within the statute if the evidence establishes conduct creating a state of mind which, operating upon the physical system, produces bodily injury, and that in determining this question all the circumstances of the case will be considered. We have also ruled that where there is a conflict in the testimony, and the trial court has had opportunity to observe the demeanor of the witnesses, and therefore has been in a better position to determine their credibility, a finding by that court will be disturbed here only when palpably wrong. McClaren v. McClaren, 45 App. D. C. 238; Cole v. Cole, 52 App. D. C. 302, 286 F. 764.

But in the present case there is practically no conflict in the testimony, and, even if we accepted the testimony on behalf of the plaintiff at its face value, the case made by the wife falls far short of establishing cruelty within the rule announced in the cases to which we have referred. We cannot escape the conviction that this wife has permitted her imagination to outrun her discretion; that she has looked as through a magnifying glass at incidents really trivial and so treated by those recognizing the reciprocal obligations of husband and wife. To grant a divorce in circumstances such as these would be to encourage disregard of those obligations and to weaken the ties that bind together not only the home but society itself. A husband who, for 19 years, turns over to his wife his entire earnings and receives from her "a small allowance for personal needs," whose character and industry stand unchallenged, certainly may not be said to be cruel to his wife because he has not, at all times and in all circumstances, conducted himself in a gentlemanly and agreeable manner. His desire that his wife keep within their means or income, and that their son have no objectionable companions, hardly is to be condemned. In short, a reading of the entire record indicates that this wife and not her husband dominated the home; and, while she undoubtedly was a faithful wife, that she permitted herself to take an unjustifiable step in filing this bill.

The decree must be reversed, with costs to be paid by the appellant, and the cause remanded, with directions to dismiss the bill.

Reversed.