**KIMMELL v. KIMMELL.**

No. 9785.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 15, 1948.

Decided Dec. 6, 1948.

Mr. Arthur J. Hilland, of Washington, D. C., for appellant.

Mr. Harry J. Harth, of Washington, D. C., with whom Mr. Earl H. Davis, of Washington, D. C., was on the brief, for appellee.

Before EDGERTON, CLARK and WILBUR K. MILLER, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal taken by Thelma Kimmell from the judgment of the District Court dismissing her complaint in an action brought against her husband, Charles Kimmell (appellee herein), seeking a legal separation from bed and board on the ground of cruelty under § 16—403 of the D.C.Code 1940. Thelma's complaint recites that Charles had been physically and mentally cruel to her, that he struck her on at least one occasion and has many times threatened to strike her, that he used vulgar and profane language, that his violent and severe discipline of their infant twin sons amounted to physical cruelty to the children and

mental cruelty to herself, and that as a result her health had been impaired and threatened with further impairment. Charles' answer categorically denies any cruelty.

It developed at the trial that Thelma and Charles were married on December 22, 1943, that the twins were born in October of 1944, that Charles was in the United States Navy from May, 1944, until December, 1945, having spent part of that time overseas, that Thelma, upon advice of counsel, left Charles on April 1, 1946, and that they have not lived together since. It is apparent from the record before us that no reconciliation between the parties is possible. The trial judge dismissed Thelma's complaint on the ground that she had not made out a cause of action upon which relief could be granted, awarded custody of the children to Thelma, and ordered Charles to pay Thelma $10 a week for the support and maintenance of the children.

Since we are convinced that one of the several points raised by appellant requires reversal, we discuss herein only that element of the appeal. Appellant urges that the evidence fully established the charge of cruelty. More particularly, appellant asserts that cruelty to the children is cruelty to their mother and that all of the evidence taken collectively constitutes ample ground for legal separation for cruelty. We agree with appellant in this respect. Thelma testified that one evening about 8 o'clock she "was putting the children [then about 15 months old] to bed; my husband was already in bed; because they were crying and fussy he became angry and cursed and swore and pulled me by my arm across the bed and slapped me on the side of the head" and that it was "hard enough to keep the side of my ear red for two days." She further stated, when questioned with regard to Charles' treatment of the children while they were teething, that "after one of the children groaned very loudly he [Charles] would lie in bed and yell to the child, 'Shut up or I will bang you,' which naturally did not stop the child. He would leap from his bed in a fit of temper, race across the room, raise his hand, and strike the child so quickly that he never had any idea where the blow would fall." Thelma stated that this went on almost every night for at least a month and that "I was so constantly in fear of not knowing what was going to ever take place to my children at night that our apartment was in a constant turmoil, with the result I did not get sleep." She stated that Charles once remarked that he had bodily kicked his previous wife down the steps at the time he had kicked her out. Appellant further testified that, as a result of this and other harsh conduct on the part of appellee, her health was generally impaired, that she lost weight and sleep, that she became very nervous and was on the verge of a nervous breakdown, and she feared for both her own safety and that of her children. She finally left Charles because she "didn't know what else to do" and claims that since their separation she has regained her lost weight and become less nervous, but that her health would be threatened with further impairment if she resumed living with Charles.

There was also testimony by appellant that appellee was scornful of religion, that he was excessively profane, and that he was purposefully rude to her friends and guests so as to further embarrass her. The trial judge indicated generally that he would not consider these last items which he termed "trivialities." The testimony of Mrs. Fatzinger, sister of appellant, generally corroborates the testimony of appellant. Charles' testimony constitutes a general denial of that of appellant. He does, however, admit spanking the children "in the proper place" and slapping them "on the back of the hand." He also admits that appellant was very nervous. As he put it, "If I would cough my wife would jump."

Several times during the trial the judge gave indication that appellant had successfully proved cruelty as charged. At the close of plaintiff's case counsel for defendant (appellee) moved for a judgment for defendant. At that time the trial judge said: "I am going to deny that. I think there is prima facie evidence of cruelty." Later, at a bench conference the judge said: "There is only $44. to divide between the two households, and I think this, that I am going to tell you now that I believe her story as to the fact that he hit her on that one occasion. I don't think the defendant

is deliberately lying. I think he has forgotten * * * and it is quite evident to me that he must have upset her nerves terribly even if he had never struck her * * *." Still later the judge said to appellant's counsel: "I think you have just about made a cause of action, because I am going to make a finding that he did strike her on that occasion because Mrs. Fatzinger corroborated her, and I think he has just forgotten it, but suppose I grant a divorce here, you have got $44. a week to divide." Finally, in his oral opinion the trial judge stated as follows: "I do not believe, however reprehensible as these actions were, that they amount to cruelty as it is known in the law. To be sure mental cruelty is included within the definition of cruelty as it is known in our divorce law, but mental cruelty as well as physical cruelty must be such as to endanger and impair the wife's health." Thereafter the judge dismissed the complaint stating that he believed that the charge of cruelty had not been established. As indicated above, we believe that this ruling was erroneous. We understand and sympathize with the natural tendency of the learned trial judge to seek to prevent even partial dissolution of the marriage and in striving to protect the interests of the children of this marriage. However, these reasons do not justify a disregard of established and acknowledged facts which amply prove a case for legal separation for cruelty. We hold that the facts found or uncontroverted clearly and fully established a cause of action for separation from bed and board on the ground of cruelty of appellee, both physical and mental, toward appellant, there being uncontroverted testimony showing the requisite impairment of health. As to mental cruelty, this case falls well within the doctrine laid down in Waltenberg v. Waltenberg, 1924, 54 App.D.C. 383, at page 385, 298 F. 842, 844, wherein we said: "To bring the case within the statute, it is sufficient if the evidence, in the absence of physical violence, establishes conduct which creates a state of mind which operating upon the physical system produces bodily injury." We have no doubt that the above-described acts of appellee, taking into consideration that appellant is and was an admittedly nervous woman, constituted actionable cruelty and justified the separation sought.

Reversed.

WILBUR K. MILLER, Circuit Judge, dissents.