(No. 35542.—

MADONNA CURRAN, Appellant, *vs.* EDWIN CURRAN, Appellee.

*Opinion filed March 31, 1960.*

MICHAEL M. KINNEY, of Wood River, for appellant.

ROBERT H. RICE, of East St. Louis, for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Madonna Curran filed suit in the city court of East St. Louis seeking separate maintenance from her husband, Dr. Edwin Curran, on the ground of cruelty. Defendant denied the material allegations of the complaint and filed a counterclaim for divorce, alleging cruelty by the plaintiff. After a hearing before the court without a jury, a decree was entered dismissing for want of equity the complaint for separate maintenance, and granting defendant a divorce.

Plaintiff was awarded custody of the minor child of the parties, defendant was ordered to pay certain sums weekly for support of the child and for alimony, and the household furniture and furnishings were decreed to be the property of the plaintiff. The decree further provided

that plaintiff convey to defendant her interest in the real estate owned by the parties in joint tenancy, consisting of the residence property and a horse farm, both pieces being subject to a mortgage then under foreclosure; and that defendant provide a home for the plaintiff and child, either by redeeming the present home and conveying it to her free and clear or by purchasing for her another residence of comparable value. From this decree the plaintiff appeals directly to this court, a freehold being involved.

The parties were married on November 23, 1943, and have an adopted son seven years of age. The defendant, a physician and surgeon, alleged in his counterclaim that on or about May 18, 1958, plaintiff struck and kicked him; that on September 25, 1958, in Centreville Hospital, she struck and scratched him in and about the face, head and body, and that on each of said occasions such conduct was without provocation. To sustain these allegations defendant testified that on May 18, 1958, in the course of an argument in their home, his wife cursed him, called him foul names, and repeatedly indulged in profanity; and that she lunged at him and threw her knee into his groin, doubling him over with severe pain. He then slapped her and pushed her away causing her to collide with a wall and fall down. When she flew at him again he gave her a shove into the front room, where she struck an end table across her ribs. Defendant further related that a police officer with whom he was acquainted arrived at the home, that he started to leave with him, and that as he was walking out the door his wife kicked him in the groin so severely that he urinated blood for two days. The officer testified that defendant and his wife were both arguing; that the plaintiff in particular was using profane language; and that as defendant started to leave she kicked him "to the right side."

According to plaintiff's version of the incident, defendant came home intoxicated and began quarreling with her.

She testified that without provocation on her part he beat her with his fist and kicked her in the ribs and neck, as a result of which she was hospitalized, and that when she returned home defendant had taken his clothes and left. The parties have lived separate and apart since then. Testimony by plaintiff's 17-year-old nephew, who was visiting the Curran home at the time in question, tended to corroborate that of the plaintiff. He stated that he saw Dr. Curran strike his wife in the face and kick her; and that both parties were using profanity. On cross-examination he testified that he did not intervene or go between them, but was a mere spectator. The record further shows that defendant is six feet tall, weighing 200 pounds; that his wife weighs about 165 pounds; and that defendant had previously suffered a heart attack.

The incident of September 25, 1958, occurred in a hospital room, when defendant was confined as a result of a penicillin reaction. His wife came in, apparently unexpectedly, and found another woman in the room with him. Defendant testified that his visitor was sitting in the room as his wife entered; that when he asked his wife to leave she began to use horrible language about him and the woman visitor and refused to leave. Defendant then got out of bed and started to lead plaintiff to the door, whereupon she cursed him, scratched him, and kicked him in the groin. He then slapped her, pushed her out of the room, closed the door, and returned to bed exhausted. A maintenance man at the hospital testified he saw scratches on defendant's face.

Plaintiff's version of the incident is that she found the other woman in bed with defendant when she entered his hospital room; and that when she ordered the other woman to leave, the defendant jumped out of bed, started to beat the plaintiff and knocked her out into the hall.

Plaintiff contends first that the proof is insufficient to warrant the granting of a divorce. It is argued that slight

acts of violence by the wife against the husband do not constitute extreme cruelty, and that a clear case must be made to justify a court in granting a divorce on the application of the husband for cruelty by the wife. We think the rules invoked by the plaintiff are not controlling here. Attacks of the kind made by Mrs. Curran upon her husband both during the May 18 altercation and in the September 25 incident cannot be characterized as slight. Defendant's testimony concerning repeated kicks in the groin and the severity of the resulting injuries was not discredited or impeached in any substantial respect. That the assaults thus shown to have been made upon him were of such a character as to constitute extreme cruelty is evident not only from his testimony but from the nature of the acts themselves. (See *Surratt* v. *Surratt*, 12 Ill.2d 21.) The mere fact that a husband is of greater size and strength does not preclude a finding of extreme and repeated cruelty on the wife's part. Each case must be considered upon all of its facts, including the conduct of the parties at the time of the occurrences, their physical and mental condition, the provocation, if any, and any other circumstances pertaining to the acts at the time of their commission. While a clear case must be made to induce a court to grant a divorce on the application of the husband for the cruelty of the wife, the same rules of law and evidence apply regardless of which one is the aggrieved party. Extreme cruelty within the meaning of the statute is shown where acts of physical violence are committed which produce pain and bodily harm; and where assaults by the wife have occurred, inflicting serious and painful injuries upon her husband, the fact that his superior strength and size might have enabled him to protect himself by force does not relieve her of the charge. (*Teal* v. *Teal*, 324 Ill. 207.) The profanity and epithets with which plaintiff's attacks were accompanied in the case at bar tended to characterize her conduct and to show her feeling and intent toward her husband.

Under all the circumstances shown by the record we think the plaintiff's conduct as testified to by the defendant constitutes extreme and repeated cruelty.

Plaintiff further contends that the evidence shows her husband was also guilty of cruelty, and that he is therefore barred from obtaining a divorce upon such grounds. It is not denied that on each occasion the defendant slapped his wife and pushed or shoved her away from him; and it appears that on the May 18 incident she fell across some furniture and incurred serious injuries as a result thereof. While such behavior by a husband is inexcusable under ordinary circumstances, the evidence here tends to show that defendant was suffering extreme pain from plaintiff's kicks, and that his acts were performed in resistance to her attacks. It is difficult to say how much ill-behavior, by a party otherwise entitled to a divorce, will bar him of his right thereto in a particular case. In deciding such questions the court must necessarily look to see which of the parties was first to blame; and if the evidence shows that the acts relied upon consist mainly of resistance to ill-treatment or assault by the other party, they will not bar the right to a divorce. (*Garrett* v. *Garrett,* 252 Ill. 318.) In the present case it could reasonably be found that defendant's acts were committed largely in self-defense, and that recrimination was not sufficiently shown.

The evidence with respect to the conduct of both parties is in sharp conflict, and the issues depend largely upon matters of credibility. Where the chancellor hears conflicting testimony in open court, as in this case, his decision will not be disturbed unless it is manifestly against the weight of the evidence. The chancellor saw and heard the parties and each of their witnesses, and was in a much better position to ascertain the truth and detect falsehood than is a court of review. In such a case this court is not justified in reversing the decree insofar as it is dependent upon the weight and credence to be given to the testimony.

*Marcy* v. *Marcy*, 400 Ill. 152; *Podgornik* v. *Podgornik*, 392 Ill. 124.

For reasons already discussed we cannot agree with the plaintiff that error was committed in dismissing her complaint for separate maintenance. The right of a wife to sue in equity for separate maintenance is restricted to cases where the living separate and apart is without fault on her part. (*Levy* v. *Levy*, 388 Ill. 179.) To be entitled to such relief she must show not only that she has good cause for living separate and apart from her husband but also that she was innocent or blameless in the matter. If she is guilty of a failure of duty or of misconduct materially contributing to the destruction of the marital relation, she is not without fault. (*Bielby* v. *Bielby*, 333 Ill. 478.) On this record testimony concerning acts of aggression and cruelty on her part is clearly sufficient to show that she was not without fault in causing defendant to leave the home.

The plaintiff also contends that the chancellor erred in ordering her to convey to the defendant her interest in the real estate owned by the parties in joint tenancy. This contention cannot be sustained. The power of a court in hearing divorce matters is derived from the statute. Section 18 of the Divorce Act (Ill. Rev. Stat. 1957, chap. 40, par. 19,) provides the court may order the husband or wife as the case may be, to pay to the other party such sum of money, or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement in lieu of alimony, *as the court deems equitable*. (Italics ours.) The property of the parties consisted of a home and a farm, both being subject to a mortgage which had been foreclosed and not redeemed. It is our opinion that the property adjustment was supported by the evidence and was fair to the plaintiff.

The decree of the city court of East St. Louis is affirmed.

*Decree affirmed.*