**Margaret Ruth CHAPPLE, Appellant,**

v.

**Charles C. CHAPPLE, Appellee.**

**No. 3540.**

District of Columbia Court of Appeals.

Argued Oct. 5, 1964.

Decided Nov. 20, 1964.

Lawrence S. Schaffner, Washington, D. C., with whom Hyman Smollar and Richard A. Mehler, Washington, D. C., were on the brief, for appellant.

John Alexander, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

2. The record does not support appellant's suggestion that the finding in the amount of $90 was only against Norman Hayes.

QUINN, Associate Judge.

This is an appeal from a judgment awarding appellee a limited divorce on the ground of cruelty.[1] The trial judge's ruling was based on the finding that appellant had struck appellee with a glass on September 23, 1963. On appeal, the wife contends that a single isolated act of cruelty is insufficient grounds for divorce under the statute and that the $200 monthly alimony award in her favor was inadequate.

A review of the record discloses that the parties were mature individuals experienced at matrimony. Both had been previously married, the husband several times. Nevertheless, the short period they lived together following their marriage on January 13, 1962, was far from harmonious. Appellee testified that appellant made him understand he was living in her home;[2] that she refused him permission to sleep on the sofa in the study; that she would not allow one of his sons by a prior marriage to enter the house; that she would not let another son bring a friend to the house; that on one occasion she used profanity; that she took a four-week trip to Europe in August 1963, at which time she insisted he leave the house; and that she only allowed him to remain after he had given her a $300 check.

Appellant testified that when she returned from her European trip on September 22, 1963, she discovered that appellee had canceled her charge accounts and had moved from the house. He had taken an apartment and when he invited her there, she saw many articles which had been removed from her home. The next evening after dinner at the apartment, during which both parties consumed several drinks,[3] appellant went into the bedroom to watch a television program. Appellee complained that the volume was extraordinarily loud and an argument ensued during which the volume was raised and lowered and the plug pulled and reset several times. Appellee finally pushed appellant away from the television set and she slid to the floor. He then prepared to leave the apartment and collected his camera and tape recorder.[4] At this point appellant emerged from the bedroom and made a gesture which appellee mistook for an attempted kiss. Instead she struck him with a glass on the side of the head just below the left eyebrow. He immediately left the apartment and went to a gasoline station where he washed the wound. He then obtained a room at his club for the night and the next day sought his barber's services in treating the wound and the developing black eye. From this time forward the parties ceased living together as husband and wife.

In this jurisdiction no case has squarely presented the question of whether a single act of physical violence constitutes cruelty within the meaning of the statute. While "at common law, separation, on grounds of cruelty, could only be decreed where actual violence had been committed, which endangered life, limb, or health, or where the conditions were such as to create reasonable apprehension of such violence,"[5] it is sufficient under the statute "if the evidence, in the absence of physical violence, establishes conduct which creates a state of mind which operating upon the physical system produces bodily injury."[6] Thus, most of the cases have been concerned with whether the evidence showed the "requisite impairment of health,"[7] and have not con-

---

1. Code 1961, § 16–904 (Supp. III 1964) provides: "(a) * * * A legal separation from bed and board may also be granted for cruelty; * * *."

2. The parties lived in a house owned by appellant.

3. They had cocktails before dinner, wine with dinner, and after-dinner drinks.

4. Appellee admitted that he intended to use the camera and tape recorder to gather evidence against appellant.

5. Waltenberg v. Waltenberg, 54 App.D.C. 383, 384, 298 F. 842, 843 (1924).

6. Id., 54 App.D.C. at 385, 298 F. at 844.

7. Kimmell v. Kimmell, 84 U.S.App.D.C. 177, 179, 171 F.2d 340, 342 (1948).

sidered the legal significance of a single assault. The question, however, has been presented in several jurisdictions.[8] The general rule followed is that a single act of physical violence does not ordinarily justify a divorce on the ground of cruelty.

In Crabtree v. Crabtree, 154 Ark. 401, 242 S.W. 804, 806, 24 A.L.R. 912, 914 (1922), the court commented:

"While a single act of physical violence does not always justify a divorce under the statute, still it may be of such violence and danger to the life of the complaining party as to constitute a ground of divorce. Much depends upon the character of the violence and upon the presence or absence of provocation. A serious blow given intentionally and without any provocation will generally give rise to the inference that it is likely to be repeated, and thus create a reasonable apprehension of danger for the future. The evidence must show that the life of the complaining party was endangered."

There the husband was granted a divorce when he sustained severe injuries as the result of a vicious assault by his wife armed with a razor.

In Elzey v. Elzey, 193 Md. 13, 65 A.2d 563, 565 (1949), the court said:

" 'It is settled law that a single act of violence will ordinarily not justify a divorce on the ground of cruelty; also that marital neglect, indifference, failure to provide as freely as the wife may desire in dress or conveniences, sallies of passion, harshness, rudeness, and use of profane and abusive language do not constitute cruelty as grounds for divorce and that only danger to life, limb, or health will constitute such cruelty. * * * ' "

There the husband was denied a divorce after his wife had hit him with a piece of chrome pipe on two occasions, and on another, while driving along the highway, had thrown a drink and then a glass at him, slightly cutting his head.

In Brown v. Brown, 215 S.C. 502, 56 S.E.2d 330, 334, 15 A.L.R.2d 163 (1949), relied upon by appellee, the court stated:

"It is generally held that a single act of physical cruelty does not ordinarily constitute ground for divorce, unless it is so severe and atrocious as to endanger life, or unless the act indicates an intention to do serious bodily harm or causes reasonable apprehension of serious danger in the future. A single act of aggravated cruelty may, however, warrant a divorce if accompanied with such precedent or attendant circumstances as to satisfy the court that such acts are likely to be repeated. * * *

"However, as courts are loath to grant a divorce for a single act of physical violence by one of the married parties to the other as constituting such cruelty as will justify a decree for divorce, the facts and circumstances accompanying its infliction should be fully laid before the court; a full history of the assault should be given."

There the wife was denied a divorce after presenting evidence that her husband had slapped her twice and pinched her.

These decisions indicate that the "character of the violence," the "presence or absence of provocation," and a "full history of the assault" are important considerations in reaching a determination. Fur-

8. See, e. g., Atkins v. Atkins, 268 Ala. 428, 108 So.2d 166 (1959); Curran v. Curran, 19 Ill.2d 164, 166 N.E.2d 13 (1960); Walden v. Walden, 250 Ky. 379, 63 S.W. 2d 290 (1933); Lee v. Lee, 145 So.2d 618 (La.App.1962); Harrison v. Harrison, 223 Md. 422, 164 A.2d 901 (1960); Mooney v. Mooney, 317 Mass. 433, 58 N.E.2d 748 (1944); Cowan v. Cowan, 160 Neb. 74, 69 N.W.2d 300 (1955); Johnson v. Johnson, 76 Nev. 318, 353 P.2d 449 (1960); Stutz v. Stutz, 139 N.J.Eq. 385, 51 A.2d 432 (1947); Pugliese v. Pugliese, 136 Pa.Super. 121, 7 A.2d 41 (1939); Persinger v. Persinger, 133 W.Va. 312, 56 S.E.2d 110 (1949).

ther, "conduct on the part of one of the parties to the marriage relation, constituting cruelty toward the other, might amount to nothing more in some homes than the ordinary course of living, while in others it would constitute the very refinement of cruelty." [9] Thus "the application of the statute in a given case must depend upon existing conditions." [10]

Applying these rulings to the case at bar, we hold that the assault by appellant did not constitute cruelty so as to justify a divorce. The sole finding to support the judgment was that appellant had struck appellee with a glass. There were no additional findings to show that appellee's health had been impaired. While a glass may be a dangerous instrumentality, the attack here produced only a minor abrasion. There was no medical evidence that the cut endangered life or limb and appellee found it unnecessary to consult a doctor. The evidence does not establish that appellee had a reasonable apprehension of serious danger in the future.[11] Further, in view of the prior scuffle over the television set, it cannot be said that the attack was wholly unprovoked or that the consumption of alcoholic beverages did not contribute to the incident. It is highly speculative whether this one act indicated an intention to do serious bodily harm.

We agree with the general rule that proof of a single assault by one spouse upon the other will not necessarily constitute sufficient cruelty to sever the bonds of matrimony. Resort to the courts following every minor altercation between the parties would "weaken the ties that bind together not only the home but society itself." [12] Of course, a single act of violence may be so severe and atrocious under particular circumstances as to satisfy the statute, but such circumstances were not present here.

The judgment is reversed insofar as the granting of a divorce to appellee is concerned, but in view of the fact that the trial judge recognized appellant's right of support and fixed the amount of such support at $200 per month, we affirm this amount as separate maintenance. Appellant's motion for counsel fees on appeal is granted in the amount of $250.

Reversed in part.

Affirmed in part.

9. Waltenberg v. Waltenberg, supra note 5, 54 App.D.C. at 385, 298 F. at 844.

10. Ibid.

11. There was, in fact, some evidence of a prior altercation between the parties in 1962.

12. Trice v. Trice, 55 App.D.C. 328, 329, 5 F.2d 543, 544 (1925).