**Jean M. Alanen, Plaintiff-Appellee, v. Ero E. Alanen, Defendant-Appellant.**

**Gen. No. 51,310.**

First District, Fourth Division.

May 19, 1967.

 

Morris L. Simons, of Chicago, for appellant.

Arnold and Kadjan, of Chicago, for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

This is an appeal by the defendant-husband, Ero E. Alanen, from the entry of a decree of divorce obtained on the grounds of extreme and repeated cruelty. Defendant contends (1) that the acts of cruelty alleged by plaintiff in her complaint, even if proven, do not constitute extreme and repeated cruelty; and (2) the second alleged act of cruelty was not proven because the plaintiff's witnesses were impeached.

Plaintiff and defendant were married on June 3, 1950. One child was born of the marriage, although plaintiff had a son by a previous marriage who lived with the parties until he went to college. With regard to the defendant's general conduct plaintiff testified:

> He was very belligerent, antagonistic. He didn't want to assume responsibility of taking care of the boy and myself and he just actually made me afraid to live with him, very neurotic.

Barbara Finch, a friend of the parties, corroborated the plaintiff's testimony. She testified that she had been in their home frequently and that the defendant was belligerent and belittled the plaintiff; that he often became intoxicated; and that he had tried to start arguments with the plaintiff but that she (plaintiff) declined to argue with him. Gale Moses, another friend, testified that plaintiff was afraid to return home from work in the evening because she was afraid of the defendant;

that she feared for her life; and that defendant was sarcastic towards the plaintiff.

Defendant's alleged acts of cruelty occurred on January 11 and April 17, 1965. Concerning the incident of January 11, defendant admitted that during an argument as to where plaintiff had been with the family car, he held a knife to her throat and threatened to kill her. Plaintiff testified that while holding the knife against her throat defendant had her pinned in a corner of their apartment, her left arm was behind her and defendant was holding her right shoulder to the wall. Defendant, however, testified that the incident took place while plaintiff was sitting in a chair. Defendant further testified that he had no intent of harming the plaintiff, but instead that he was only bluffing. Barbara Finch, who worked with plaintiff as a waitress, testified that she saw plaintiff at work on the evening of January 12:

> I saw she was shaken more so than usual. Jean had started to be quite shaky. She had gotten to the point where she was afraid to go home.

She further stated that plaintiff informed her:

> Ero had held a knife at her throat and the only thing that saved her was that her son happened to come in at the time. He was threatening her [with a knife].

The alleged incident of April 17 occurred after the funeral of defendant's father, for which the parties had travelled to Michigan with their sons. Plaintiff testified that defendant pushed her across the room against a gas heater after she interceded as defendant was choking her son (by a previous marriage) during a dispute. Defendant denied pushing or touching the plaintiff. He stated that during a dispute he grabbed the son by his shirt, not by the neck, and that he let go after being

threatened by the plaintiff. Barbara Finch testified that she saw the plaintiff at work one or two days after the alleged incident and that she was holding her stomach and limping. She stated:

> So Jean went to Michigan and when she came home I looked at her and I said Jean, what are you limping for and she was kind of holding herself like this [indicating how plaintiff was holding her stomach] and she said I had trouble with Ero again and it seems as though Ero had tried to go after her son and she tried to interfere and he pushed her.

Gale Moses testified that she saw the plaintiff the day after she returned from Michigan and that plaintiff was limping and was holding her stomach as if in pain. The witness further stated: "She said Ero had hit her, he had pushed her." There was also some confusion as to whether plaintiff had a bruise on her arm.

Francis Suski (a brother-in-law of the defendant but not plaintiff's brother) testified on behalf of the defendant and stated that plaintiff had informed him of an altercation she had with defendant on April 17 and that she was leaving him. Suski further stated that: "I did not observe any marks or bruises upon her face and body at that time nor anything with reference to her stomach." There was no reference in his testimony to the existence or absence of plaintiff's limp.

■ Defendant first contends that the alleged acts of cruelty, even if established, do not constitute extreme cruelty.* In support of his contention defendant cites various cases in which the court has held that certain acts of cruelty were not sufficiently extreme so as to justify a divorce. Defendant then argues that the degree of cruel punishment suffered by the plaintiff in the in-

---

* Extreme and repeated cruelty is a ground for divorce in Illinois (Ill Rev Stats 1963, c 40, § 1).

stant case was less than that suffered by the respective plaintiffs in those cases, and that therefore a ground for divorce has not been established. Acts of violence vary from case to case, and each case must be considered upon all of its facts. Stockman v. Stockman, 38 Ill App2d 186, 186 NE2d 547. In that case the alleged acts of cruelty were based upon the husband's conduct of January 15 and 27, 1959. With regard to the first incident the plaintiff testified that "he hit me on the shoulder and on the back, with his fist and bruised me." The plaintiff in that case further testified that on January 27 "he hit me across the mouth and bruised me through my knee cap and up to my hip. My mouth was bruised on the outside and was cut on the inside." The court stated at page 189:

> There is no way to tell how severe an act of physical violence actually is from reading a printed page in a brief. Just how severe the cruelty was in the authorities cited is also hard to determine. While every act of physical contact is not an act of cruelty within the statute, when it produces pain and bodily harm it will support a decree for divorce. Bruises, cuts, limping, and the like are not usually the result of slight acts of cruelty. While they are not alone the test, they may aid a trial judge to find that the acts of violence were acts of cruelty within the statute. The trial judge should also consider such other things as the physical condition of the parties, the provocation, the anger displayed and the like.

In the instant case it was uncontradicted that the defendant acted in a belligerent and antagonistic manner toward the plaintiff. According to the testimony, plaintiff ultimately became so frightened that she was afraid to go home. On January 11, 1965, defendant in a fit of anger held a knife to plaintiff's throat and threatened to

57

kill her. We cannot say that this act did not constitute extreme cruelty because defendant did not slit her throat. On April 17 of that same year, defendant pushed the plaintiff across a room into a gas heater with utter disregard for her well-being. According to plaintiff's witnesses, she subsequently walked with a limp and held her stomach as though in pain.

We therefore find that the conduct of the defendant, illustrative of his obvious disregard for the safety and welfare of the plaintiff, is sufficient to constitute extreme and repeated cruelty.

Defendant next contends that the testimony of plaintiff's witnesses was not credible. However, the issue of credibility is for the determination of the chancellor. Curran v. Curran, 19 Ill2d 164, 166 NE2d 13. In that case the court stated at page 169:

> The evidence with respect to the conduct of both parties is in sharp conflict, and the issues depend largely upon matters of credibility. Where the chancellor hears conflicting testimony in open court, as in this case, his decision will not be disturbed unless it is manifestly against the weight of the evidence. The chancellor saw and heard the parties and each of their witnesses, and was in a much better position to ascertain the truth and detect falsehood than is a court of review. In such a case this court is not justified in reversing the decree insofar as it is dependent upon the weight and credence to be given to the testimony.

We find that the decision of the chancellor in the instant case was not manifestly against the weight of the evidence.

Defendant next contends that he did not receive a fair trial and urges this court to review the record and find support for that contention. A court of review

will not search the record for error. Darling v. Charleston Community Memorial Hospital, 50 Ill App2d 253, 308, 200 NE2d 149.

We find that the defendant has committed extreme and repeated cruelty against the plaintiff. Therefore the decree of the Circuit Court of Cook County is affirmed.

Affirmed.

ENGLISH, P. J. and McCORMICK, J., concur.