(No. 35920.—

VERDELL TUYLS, Appellee, *vs.* ROBERT TUYLS, Appellant.

*Opinion filed January 20, 1961.*

HEMPSTEAD, REDMAN, SHEARER & GORECKI, of St. Charles, (RICHARD D. SHEARER, of counsel,) for appellant.

O'BRIEN, BURNELL, PUCKETT & BARNETT, of Aurora, (WILSON D. BURNELL, and JOHN A. KRAUSE, of counsel,) for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

This is a direct appeal prosecuted by the defendant, Robert Tuyls, to review a decree of the circuit court of Kane County granting a divorce to the plaintiff, Verdell Tuyls, and ordering the defendant to convey to her, in satisfaction of special equities and as a property settlement in lieu of alimony, all interest which he had as a joint tenant of an apartment building in which the parties resided prior to their separation. A freehold being involved, the jurisdiction of this court has been properly invoked.

When plaintiff first became acquainted with defendant in 1951, she owned real estate in Plano and a duplex house in Oswego, but during the following year she sold her Plano property and delivered a check in the amount of $3,350 to the defendant. In 1953, defendant began collecting the rents, making necessary repairs, and generally undertook the management of the Oswego duplex until it was sold in 1954, at which time the net sale proceeds of $4,071.23 were deposited in defendant's separate bank account. On June 1, 1954, in contemplation of marriage, an apartment building located at 72 North Fourth Street, Aurora, being the property now in controversy, was purchased in the name of Robert Tuyls and Verdell Tuyls, as joint tenants; the down payment of $5,198.58 was procured from defendant's bank account; and the unpaid balance of approximately $13,000 was financed by a first mortgage upon the premises.

The parties were married on July 19, 1954, and plain-

tiff thereafter continued to work, earning something in excess of two thousand dollars each year until 1959, approximately 85% of which she delivered to defendant. In addition, defendant collected $315 each month in rentals from the other apartment occupants. Meanwhile, defendant was engaged in the used car business until July, 1955, after which he alternately worked around the apartment house, sought employment, and finally became engaged in a liquor business in November, 1956, which, by defendant's own admission, has not been an especially profitable venture.

As to the alleged acts of cruelty, plaintiff testified that defendant struck her in the face in either July or August, 1957, and on two or three other occasions prior to April 27, 1959. During the early morning hours of the latter date, according to plaintiff, the defendant hit her with his fists, slapped her in the face, and locked her outside the house so as to require the summoning of police and the arrest of the defendant. Clifton Retterer, a local justice of the peace, and Melvin Kramer, the police officer who arrested defendant, both testified that plaintiff was bleeding about the mouth when they saw her on the morning of April 27, 1959, and plaintiff's mother recalled seeing bruises upon her daughter's arms following the 1957 altercation. Plaintiff also swore that her husband had at no time repaid any part of the $3,350 she loaned him in 1952 nor accounted to her for the various rentals he had received, that she furnished the groceries while they were married, that defendant frequently took vacation trips while she continued to work, and that sums borrowed for apartment improvements were diverted by defendant for his own personal use.

In his own behalf, Robert Tuyls admitted his total income for the past two years had not amounted to more than seven hundred dollars, insisted the $3,350 received by him from plaintiff in 1952 was not a loan but an investment, claimed he had spent several thousand dollars

of his own money in improving the Oswego and Aurora properties, but denied that he had at any time struck or beat the plaintiff. He now contends that extreme and repeated cruelty was not established by the evidence and that the lower court erred in awarding the real estate to plaintiff.

To establish cruelty within the meaning of our Divorce Act (Ill. Rev. Stat. 1959, chap. 40, par. 1) it is necessary to prove by a preponderance of the evidence that the guilty party has on at least two separate occasions committed acts of physical violence against his spouse resulting in pain and bodily harm, (*Curran* v. *Curran,* 19 Ill.2d 164; *Wesselhoeft* v. *Wesselhoeft,* 369 Ill. 419; *Farnham* v. *Farnham,* 73 Il. 497,) and if cause for divorce is so established and it shall appear that either party holds title to real estate equitably belonging to the other, the court may compel a conveyance to the party entitled thereto upon such terms as it deems advisable. (Ill. Rev. Stat. 1959, chap. 40, par. 18.) Equity and good conscience require that a person shall not profit by his own wrong, and if it appears that the property came to the marriage by the sole efforts of the innocent mate and that the rights of third parties have not intervened, he or she may be entitled to its return without regard to who holds legal title, (*Decker* v. *Decker,* 279 Ill. 300; *Insoda* v. *Insoda,* 400 Ill. 596,) or whether the other party had acquired an interest therein by gift from the contributing spouse. *Bissett* v. *Bissett,* 375 Ill. 551; *Gilbert* v. *Gilbert,* 305 Ill. 216; *Shipman* v. *Shipman,* 360 Ill. 635.

Although the evidence as to cruelty is somewhat conflicting, there is sufficient proof thereof, if believed, to warrant the granting of a divorce in the present case. Since the chancellor observed the witnesses and heard them testify in open court, he was in a much better position to determine their credibility than is a court of review (*Curran* v. *Curran,* 19 Ill.2d 164; *Berlingieri* v. *Berlingieri,* 372 Ill. 60) and his finding in this respect will not now be disturbed.

Neither do we believe the lower court erred in awarding the apartment property to the plaintiff. The record indicates at least eighty per cent of the original down payment was furnished by the wife, that she contributed most of the family income during their marriage, and that whatever sums were received by defendant were largely devoted to his own pleasures. To allow defendant to share in this property under these circumstances would be to reward him for his unconscionable conduct. In this respect the instant case is somewhat similar to *Nowogurski* v. *Nowogurski*, 404 Ill. 276, wherein we upheld the granting of joint tenancy property to the wife who had contributed largely to the support of the family and had paid for the property from her own earnings and funds. The fairness of the present determination is further demonstrated by the fact that defendant is forever relieved of accounting for rents received by him from the Oswego and Aurora properties and from all future alimony claims. *Haderaski* v. *Haderaski*, 415 Ill. 118; Ill. Rev. Stat. 1959, chap. 40, par. 19.

For the reasons stated, the decree of the circuit court of Kane County is affirmed.

*Decree affirmed.*