(No. 36961.—

ANNE S. EVERETT, Appellee, *vs.* JAMES E. EVERETT, Appellant.

*Opinion filed September 28, 1962.*

GORMAN AND DRUGAS, of Chicago, (ROBERT J. GORMAN, of counsel,) for appellant.

IRWIN, DENEKE & PENNER, of Chicago, (HAROLD E. PENNER, of counsel,) for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Anne S. Everett filed a complaint in the superior court of Cook County seeking a divorce from her husband, James E. Everett, on the ground of extreme and repeated cruelty. Defendant's answer denied the cruelty and he counterclaimed for divorce on the ground of desertion. Plaintiff denied this charge of desertion and filed a supplemental complaint alleging that he had deserted her. The decree entered by the trial court granted plaintiff's prayer for divorce on the ground of desertion; awarded the care, custody and control of the parties' three minor children to her, gave her the household furniture and furnishings, and ordered defendant to pay $30 per week to plaintiff for alimony and $25 per week for the support of each of the minor children, convey an undivided one-half interest in the residence to plaintiff, transfer one half of the 500 shares of stock he owns in his employer's company to plaintiff, and pay $1,750 to plaintiff's attorneys as their fee in this case. Defendant appeals directly to this court because a freehold is involved.

The defendant contends that the trial court erred in finding that he had deserted plaintiff and should have found that she had deserted him. It is undisputed that the parties had

lived separate and apart for more than one year when this action was commenced. While the testimony as to the cause of the separation was conflicting, there is evidence in the record, which, if believed, warranted the trial court in finding that the parties lived separate and apart because of defendant's extreme and repeated cruelty. Since the chancellor observed the witnesses and heard them testify, his finding in this respect will not now be disturbed. *Tuyls* v. *Tuyls,* 21 Ill.2d 192; *Curran* v. *Curran,* 19 Ill.2d 164.

Defendant also argues that the allowance of $30 a week for alimony and $25 a week for support of each of the children is excessive. The plaintiff testified to the cost of groceries, fuel, lights, water, garbage disposal, insurance, telephone, clothing, laundering, automobile expenses, medical and drug expenses and school incidentals. She stated that the cost of living expenses for her and the children is about $800 per month. While the record is not clear, this figure of $800 per month or about $185 per week apparently includes the amount that will be needed for rent. In any event, these costs of living figures were not contradicted or questioned by defendant. He points out, however, that after paying the allowance of $103 a week he must live on $73.60 a week, and argues that this demonstrates the excessiveness of the allowance.

In general, the amount of alimony and child support to be allowed in a case such as this must be determined by accommodating insofar as possible the needs of the parties and children with the available means of the parties, due regard being given to their stations in life. The available income of the parties is as follows: the $178.60 a week defendant receives after deductions for taxes and medical insurance, $8 to $54 a week which plaintiff earns for tutoring, and $12 a week social security payment she receives. While the allowance decreed by the trial court takes a substantial portion of defendant's income, it fails by some $15 to $62 per week, depending on plaintiff's earnings from

tutoring, of meeting the amount required to support her and the children. There is nothing in the record to indicate what amount would be necessary in order to maintain defendant according to his present station in life. From a careful review of the evidence, we are of the opinion that the trial court was within its discretion in fixing the amount of alimony and child support that it did.

Defendant contends that the court erred in ordering him to convey an undivided one-half interest in his home to plaintiff and to transfer one half of the stock he owns in his employer's company to her. It is undisputed that the parties purchased a home in Glenview in 1950 and plaintiff contributed $3500 of her own funds toward the down payment. Title to this property was held by the parties as joint tenants. In March, 1952, defendant purchased a lot in Northfield in his own name for the construction of a new home. On February 26, 1953, plaintiff advanced $4850 to defendant to apply on construction costs of the new residence, which funds he was to repay. On July 27, 1954, the Glenview home was sold and, after crediting the purchasers with the mortgage payments assumed and the payment of closing costs, plaintiff and defendant received $3135.95, which was also applied to construction costs on the new home. They executed a mortgage on the Northfield property to secure a loan for about $23,500. It was stipulated that the home cost $55,759.60.

Plaintiff testified that during 1950, 1951 and 1952 she spent over $1500 for family expenses and mortgage payments on the Glenview home. Defendant testified that during this period he was giving his wife $400 per month to be used for household expenses and mortgage payments. After they moved into the Northfield residence, defendant made all the installment payments on the new home. Plaintiff testified that from 1954 through 1957 she used about four or five thousand dollars of her own funds for family expenses and defendant testified that during this period he

gave his wife between $285 and $508 a month for family expenses.

Plaintiff also testified that the family lawyer had told her that the Northfield home should be in her husband's name in order to take advantage of a marital trust will. The attorney, who was called on plaintiff's behalf, did not corroborate her testimony and stated that the will he proposed is designed to operate whether or not the property is held in joint tenancy.

Plaintiff contends that her contribution toward the purchase of the Glenview home, her signing of the mortgage on the Northfield house, her contribution of $4850 for construction costs of the new home, her expenditure of $4000 or $5000 for family expenses, her living in the house since 1954 and the birth of the children give her special equities which justified the court acting under section 17 of the Divorce Act (Ill. Rev. Stat. 1959, chap, 40, par. 18,) to order defendant to convey an undivided one-half interest in the Northfield home to her and to transfer one half of his stock to her. Section 17 provides: "Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable." To justify a conveyance or transfer under section 17, however, special circumstances and equities must be alleged and established by the evidence, (*Stevens* v. *Stevens,* 14 Ill.2d 99; *Podgornik* v. *Podgornik,* 392 Ill. 124; *Skoronski* v. *Skoronski,* 395 Ill. 301,) which is unnecessary when the court orders a conveyance or transfer of property in lieu of alimony under section 18. (Ill. Rev. Stat. 1959, chap. 40, par. 19; *Persico* v. *Persico,* 409 Ill. 608.) The plaintiff's complaint failed to allege any special circumstances or equities with respect to the 500 shares of stock in defendant's name, nor did she pray for a transfer of any of the shares to her. Furthermore, there is no evidence that

any of her savings, earnings or services were contributed in acquiring the shares of stock. The court therefore erred in ordering defendant to transfer one half of the shares of stock to plaintiff.

It is also well established that the rights or interests that one spouse has in the property of the other by virtue of the marriage relation alone will not justify a conveyance under section 17 (*Anderson* v. *Anderson,* 380 Ill. 435; *Bissett* v. *Bissett,* 375 Ill. 551; *Termaat* v. *Termaat,* 357 Ill. 472,) but it must be alleged and proved by the spouse seeking a part or all of the property in the name of the other that he or she has furnished valuable consideration such as money or services other than those normally performed in the marriage relation which has directly or indirectly been used to acquire or enhance the value of the property. (*Tuyls* v. *Tuyls* 21 Ill.2d 192; *Cross* v. *Cross,* 5 Ill.2d 456; *Nowogurski* v. *Nowogurski,* 404 Ill. 276.) Thus, the signing of the mortgage, plaintiff's residence in the Northfield home and the birth of the children do not give her an equity in the property.

It is clear nevertheless that plaintiff did make valuable contributions toward the construction of the residence. Defendant admits that plaintiff contributed $3500 toward the down payment on the Glenview home. Whether plaintiff made mortgage payments on this home from her funds or from the $400 per month defendant gave her for family expenses is immaterial because the net proceeds of $3135.95 from the sale of that home was all that was applied on the construction costs of the new home. Although title to the Glenview home was in joint tenancy, we believe that under the circumstances of this case plaintiff's contribution should be traced into the Northfield home without regard to the joint tenancy. She also advanced $4850 to apply on construction costs, which amount defendant was to repay. Plaintiff therefore has an equitable interest in the Northfield home in the amount of $7985.95.

Although plaintiff testified that she had used four to five thousand dollars of her own funds for household expenses between 1954 and 1957, it appears that during this same period, defendant was giving her between $285 and $508 a month and making the mortgage payments of $203 per month. While plaintiff's total contribution for this period is large, it is a small fraction of the contribution to household expense made by defendant. In *Spalding* v. *Spalding*, 361 Ill. 387, this court, after reviewing cases from this State and others, held that payments voluntarily made by a wife for family expenses during the time the husband and wife are living together do not create an indebtedness from the husband to the wife, in the absence of an agreement to that effect. If the wife had been providing for a substantial portion of the family expenses while the husband was using his funds to acquire property in his name, there would be some justification for considering her contributions as indirectly being used to acquire the property. Under the facts of this case, however, we do not believe that plaintiff's contributions for household expenses give her an equity in the residence, especially since the divorce decree provides that she is to receive all the household furniture and furnishings.

We hold that the plaintiff has an equitable interest of $7985.95 in the Northfield home, that she is entitled to a lien on the property for that amount, (see *Killebrew* v. *Killebrew,* 398 Ill. 432,) and that she has no interest in the stock. That part of the decree directing defendant to transfer one half of his stock to plaintiff is reversed; that part directing him to convey an undivided one-half interest in the Northfield home is reversed and remanded with directions to enter a decree in accordance with the views herein expressed; and in all other respects the decree of the superior court of Cook County is affirmed.

*Affirmed in part and reversed in part
and remanded, with directions.*