**Suzanne Haring, Plaintiff-Appellee, v. Calvin Frederick Haring, Jr., Defendant-Appellant.**

**Gen. No. 69–13.**

Fifth District.

June 22, 1970.

Rehearing denied July 23, 1970.

Earl L. Vuagniaux, Vuagniaux & Metzger, of Edwardsville, for appellant.

Gerald McGivern, Wiseman, Shaikewitz & McGivern, of Alton, for appellee.

CRAVEN, P. J., delivered the opinion of the court.

This is an appeal from a decree granting a divorce to plaintiff, Suzanne Haring, against defendant, Calvin Frederick Haring, Jr., on the grounds of extreme and repeated physical cruelty and awarding her custody of the children, certain property and child support.

Defendant-husband, in his answer to the complaint, denied that the plaintiff-wife had a cause of action and pleaded recrimination as an affirmative defense. During the trial this affirmative defense was amended to specifically allege that plaintiff was guilty of adultery with one Robert McLean and also was guilty of extreme and repeated mental cruelty during the time in that she kept company with Robert McLean over her husband's objections.

A petition for temporary alimony, child support, solicitors' fees and costs was filed by plaintiff. Thereafter, defendant filed a motion for summary judgment. The motion for summary judgment was denied, the court holding that there were disputed facts. The case was heard on the merits by the court without a jury. The court found the issues in favor of the plaintiff and against the defendant and granted plaintiff the divorce on the grounds of extreme and repeated physical cruelty on the part of the defendant.

In this appeal defendant contends that the evidence and the law do not support the trial court's finding of

117

extreme and repeated physical cruelty nor its finding against defendant on the defense of recrimination. He also contends that the trial court failed to rule correctly on certain objections to evidence and upon defendant's motion for summary judgment.

Plaintiff, Suzanne Haring, aged 28 years, and Calvin Haring, aged 29 years, were married September 7, 1957. Three children were born of the marriage, Ricky, aged 9½ years, Robie, aged 8 years, and Mark, aged 6 years.

Plaintiff testified that while on a trip to the Ozarks on September 1, 1968, defendant pushed her against the door frame of a cottage, causing pain in her right side and injuring her face. This testimony was corroborated by the testimony of Della McLean and Robert C. McLean, Jr., friends, who were present on the trip. Both Della and Robert McLean testified that on this occasion, plaintiff was crying and had a bruise on the side of her head and stated that her husband had shoved her into the door molding. Defendant, called under section 60 of the Civil Practice Act (Ill Rev Stats 1967, c 110, par 60), admitted that upon this occasion he forced his wife against the cabin wall, causing a red mark on her face, but stated he did it in defense of himself.

As a second act of physical cruelty, plaintiff testified that on September 3, 1968, after she had refused to accompany defendant on a search for a trailer hitch for his car, defendant hit her on the face, around the temple, which caused a bruise. He then picked her up by the neck and threw her on the bed. She testified that he then came at her with a knife, pushed her on the floor, held the knife next to her neck and said he was going to take her life and his own. This testimony also was corroborated by the testimony of Della McLean, whose house plaintiff visited that day. Della McLean testified that plaintiff had a bruise by her temple and a black-and-blue

lip, as well as a bruise on one of her arms, and that plaintiff told her that her husband had beaten her that morning and threatened her with a butcher knife.

On his direct testimony, in defense, defendant testified that before he pushed plaintiff into the wall on the September 1 occasion she had slammed the cabin door in his face and hit him on the arm and chest. He also testified that on the September 3 occasion she hit him in the face and hand and kicked him. There was no corroboration of defendant's testimony as to these acts by any other witness.

Some ten witnesses, other than defendant, testified for defendant, including defendant's mother, brother, the brother's wife, and the two older children of the parties. Several of these witnesses were neighbors who lived near the Haring home. These witnesses testified to the general conduct of defendant around the home—helping in the housework and being a good husband.

Further, several of these neighbor-witnesses testified that Bob McLean had visited the Haring home many times when defendant was away at work and that his car was there on many occasions when defendant and the children were away. One of these witnesses, a neighbor, Helen Marcus, testified that there were occasions where Bob McLean was at the Haring house and the youngest child, Mark, would come to her house and say, "Mommy has locked me out of the house." Another neighbor, Gladys Winter, testified that on eight or ten occasions she had seen Bob McLean come out of the Haring home, alone, when defendant was not at home. Other witnesses testified to somewhat the same effect.

The two older children of the parties were called as witnesses by defendant. Ricky, aged 9½ years, testified that he had seen Bob McLean kissing his mother at the Haring home when his father was not present; that he saw Bob McLean come out of his parents' bedroom

on one occasion; and that he had been locked out of the home on two or three occasions when Bob McLean was there and his father was gone.

Robie, aged 8 years, testified that on one occasion he saw Bob McLean and his mother kissing in the kitchen; that on occasions Bob McLean's car was at their house; that one time when he was walking in the hall of his house, Bob McLean came out of the bedroom and he saw his mother get off the bed; and that he was locked out of the house on one or two occasions when Bob McLean was there.

Otis Snyder, a neighbor; John Haring, defendant's brother; Judy Haring, the wife of defendant's brother; and Velma Haring, defendant's mother, all testified that on the evening of September 3, they were in the presence of and saw plaintiff, but did not see any marks or bruises on her face or lip.

Other testimony was given that Bob McLean kissed plaintiff at a dance; that defendant was concerned that plaintiff danced too close to Bob McLean; and that plaintiff and McLean were friends.

The evidence in this case, as it often is in a contested divorce case, is conflicting. As was stated in Tuyls v. Tuyls, 21 Ill2d 192, 195, 171 NE2d 779, 781 (1961), "To establish cruelty within the meaning of our Divorce Act (Ill Rev Stats 1959, c 40, par 1), it is necessary to prove by a preponderance of the evidence that the guilty party has on at least two separate occasions committed acts of physical violence against his spouse resulting in pain and bodily harm (Curran v. Curran, 19 Ill2d 164 [166 NE2d 13 (1960)]; Wesselhoeft v. Wesselhoeft, 369 Ill 419 [17 NE2d 56 (1938)]; Farnham v. Farnham, 73 Ill 497 [(1874)]) . . . ."

In our opinion, the evidence shows acts of defendant on at least two separate occasions which were of physical violence to plaintiff and caused her bodily pain. Further, except for the testimony of defendant himself, the evi-

dence shows that defendant's acts were not provoked by plaintiff in any manner so as to justify such acts.

■ Although there is some conflict in the testimony on the question of corroboration that defendant's acts against plaintiff's face and body resulted in bruises, lumps or discoloration on each of the two alleged occasions of physical cruelty, there is sufficient proof to warrant granting a divorce on the grounds of extreme and repeated cruelty in this case. The court, hearing and observing the witnesses, was in a better position to determine their credibility than is a court of review. Thus, as has been repeatedly held by the courts of this State in such a situation, the findings of the trial court should not be disturbed. Tuyls v. Tuyls, supra; Curran v. Curran, 19 Ill2d 164, 166 NE2d 13 (1960); Berlingieri v. Berlingieri, 372 Ill 60, 22 NE2d 675 (1939); Riva v. Riva, 93 Ill App2d 137, 235 NE2d 655 (3rd Dist 1968).

■ Defendant's defense of recrimination, affirmatively pleaded, if proved, would have barred plaintiff's divorce. The defense of recrimination has been repeatedly recognized by the courts of this State. As was stated in Elston v. Elston, 344 Ill App 233, 100 NE2d 635, 639 (2nd Dist 1951), " 'Under such circumstances the rule long ago announced in Duberstein v. Duberstein, 171 Ill 133, 49 NE 316, 320 [1898], is clearly applicable here. As in that case, the defendant asserted recrimination in defense of plaintiff's charges and thus we repeat: "Divorce is a remedy provided for an innocent party . . . ; so that, when each party has committed a cause for divorce, the causes being of the same statutory character, neither can complain of the other. . . ." . . . ' " (Levy v. Levy, 388 Ill 179, 57 NE2d 366, 370 (1944).) Such an affirmative defense, however, must be proved by a preponderance of the evidence.

■ While we recognize that adultery seldom can be proved as a direct fact and that it may be established by circumstantial evidence (Stiles v. Stiles, 167 Ill 576, 47

121

NE 867 (1897); Marcy v. Marcy, 400 Ill 152, 79 NE2d 207 (1948)), we cannot say that the evidence in this case is such that the trial court erred in finding that the defense of adultery had not been proved by a preponderance of the evidence. ". . . to establish adultery by circumstantial evidence, the proofs must convince the mind affirmatively that actual adultery was committed, since nothing but the carnal act can lay the foundation for a divorce. . . ." Fowler v. Fowler, 315 Ill App 270, 42 NE2d 954, 957 (4th Dist 1942). Likewise, in order to establish adultery, proof of the clearest and most convincing character must be offered that an actual carnal act of adultery was committed. Metoyer v. Metoyer, 92 Ill App2d 32, 235 NE2d 882 (1st Dist 1968) (abst).

 Likewise, in the state of the evidence in the instant case, we cannot hold that the trial court erred in refusing to hold that defendant's affirmative defense of recrimination, based upon extreme and repeated mental cruelty, had been proved by a preponderance of the evidence. The credibility of the witnesses could be determined best by the trial court who saw and heard them testify. Even if their testimony was believed, the proof fell far short of proving such extreme and repeated mental cruelty as would bar plaintiff's cause of action.

We have reviewed the rulings of the trial court in sustaining objections to a number of questions asked plaintiff and certain other witnesses, which rulings plaintiff has alleged to have been error. Without detailing each such question and ruling, we find no reversible error in any of these rulings. Many of these questions were irrelevant, while others were improper as calling for hearsay evidence. We do not deem it necessary to further consider these as grounds for reversal.

 The defendant's motion for summary judgment was properly denied, as defendant's answer denying

plaintiff's allegations of extreme and repeated cruelty in her complaint and defendant's affirmative defense of recrimination raised issues of fact to be determined. A motion for summary judgment will not lie where a genuine issue of material fact exists (Ill Rev Stats 1967, c 110, § 57(3)). Rowan v. Matanky, 348 Ill App 296, 108 NE2d 799 (1st Dist 1952); Weather-Gard Industries, Inc. v. Fairfield Savings & Loan Ass'n, 110 Ill App 2d 13, 248 NE2d 794 (1st Dist 1969). Further, defendant's allegation of an affirmative defense of recrimination required that he introduce proof to sustain this defense.

For the foregoing reasons, the judgment of the trial court was correct and should be affirmed.

Judgment affirmed.

SMITH and TRAPP, JJ., concur.