Therese M. Knox, Plaintiff-Appellee, *v.* James F. Knox, Defendant-Appellant.

(No. 60498;

First District (4th Division)—August 13, 1975.

Burke and Burke, of Chicago (John M. Burke, of counsel), for appellant.

Hogan and Crowe, of Chicago (Thomas M. Hogan and Shelmerdeane Miller Hogan, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

This is an appeal from a judgment of divorce entered in favor of plaintiff on the grounds of extreme and repeated physical cruelty. Plaintiff was also awarded the marital home, child support, and attorney's fees. Defendant appeals, presenting the following issues for review: (1) whether the trial court's finding that defendant was guilty of extreme and repeated physical cruelty is against the manifest weight of the evidence; (2) whether the court erred in awarding the marital home to the plaintiff; (3) whether the court's award of child support is excessive and an abuse of discretion; and (4) whether the court's award of attorney's fees is excessive.

Plaintiff's complaint for divorce, filed June 21, 1973, averred that the parties were married on April 16, 1955. Two children were born during the marriage; Kevin Michael, born September 16, 1955, and Ann Marie, born September 30, 1958. The complaint further alleged that the defendant had, without provocation, committed acts of physical cruelty against plaintiff on March 17, 1971, January 1, 1973, and May 6, 1973. In his answer, defendant denied the allegations with respect to physical cruelty.

The evidence concerning the disputed issues may be summarized thusly. Plaintiff testified that on May 6, 1973, following an argument, the defendant hit and knocked her down. According to plaintiff, she did not provoke this attack which caused her to suffer marks, bruises, injury and pain. The parties' children were home at the time of the incident and saw the marks on plaintiff's body afterward. Continuing her testimony, plaintiff stated that on January 1, 1973, the defendant became intoxicated at a New Year's Eve party which they attended. Thereafter he started to argue with her and, when she tried to reason with him, knocked her down on the sofa, held her arms, and hit her. Again the children were in the house during the incident and saw the bruises and

marks on plaintiff's body afterward. Finally, on March 17, 1971, according to plaintiff, the defendant started to argue following a St. Patrick's Day party at which he had been drinking heavily. When the parties came home, defendant got plaintiff down on the bed, put his knees on her arms, and struck her. Plaintiff stated that her face was bruised and her eye blackened for 2 weeks following the incident. She was not absent from work and did not consult a doctor about her condition.

Plaintiff testified further that the parties had not lived together as man and wife since May 6, 1973. Their 15-year-old daughter was residing with her, but their son had been put out of the house by the defendant and was living with a friend while working part time and attending college. Plaintiff stated that if awarded a divorce, she would make a home for Kevin and seek support for him as long as he attends school.

According to the plaintiff, the marital residence is owned by the parties in joint tenancy and has a fair market value of $28,000 to $30,000. There is an outstanding balance of $5,000 on the mortgage. Plaintiff further stated that the home was purchased with a $5,000 down payment received from her parents, which had never been repaid and she considered to be a loan. She requested that the court award the home to her.

Plaintiff stated that she earned approximately $8,000 per year from her work as a medical secretary and intended to continue working. She is 39 years of age. According to plaintiff, the defendant has been employed as a route assistant for a dry cleaning establishment for 17 years and currently earned approximately $14,000 per year. In addition, stated the plaintiff, he received about $100 per month from his union. During the marriage, both parties deposited their paychecks into a joint checking account. Plaintiff testified that the parties had a joint checking account at the South Holland Trust & Savings Bank with a balance of $2,045.43, her personal checking account had a balance of approximately $300; and the defendant had $3,000 to $4,000 in savings bonds and life insurance. Plaintiff estimated her monthly expenses in operating the household at $900 and stated that she needed $400 per month together with her salary to meet the expenses. She requested $50 per week per child as and for child support. She further stated that she had paid the sum of $250 as a retainer for her attorney and asked the court for $2500 from her husband for additional attorney's fees.

On cross-examination, plaintiff denied hitting her husband on May 6, 1973, and did not recall throwing anything at him or attacking him with a weapon. She was not attended by a doctor after this altercation and did not receive any lacerations or cuts on her body. Except for the

visibility of her bruises, the injuries she sustained were not sufficient to hinder her employment. Plaintiff further testified that the defendant hit her with both an open and closed fist during the incident of January 1, 1973, and that she did not return to work for 2 days thereafter. She received some medicine for her nerves after this incident but sought no other medical assistance. Regarding the incident of March 17, 1971, plaintiff testified that defendant hit her with his closed fist, although she had alleged in the complaint that she was hit with an open fist. Plaintiff admitted that she had defended herself with a weapon during the incident.

The next witness called on behalf of the plaintiff was her mother, Margaret Martin, who testified that she noticed on or about March 17, 1971, and again on or about January 1, 1973, that the plaintiff's eye had been blackened. The witness further stated that plaintiff had bruises on her body on or about May 6, 1973. With respect to the $5,000 down payment on the marital residence, Mrs. Martin stated that she had never asked the parties that the money be repaid.

Kevin Knox, the parties' son, testified on behalf of his mother that he saw his father hit her about 10 times. These incidents, according to the witness, caused bruises and were usually associated with his father's drinking. He knew of no provocation on plaintiff's part, and the testimony describing his knowledge of the altercations was substantially similar to that of the plaintiff. On cross-examination, the witness stated that he saw his mother hit his father twice. Further, Kevin Knox described an incident on December 22, 1973, during which his father placed a stereo and other items in the driveway and threatened to throw more things out. A scuffle between Kevin and the defendant ensued, after which the witness moved from the house. Kevin Knox stated that he was living with a friend at the time of trial because of the arguments and abuse at home.

The next witness called by the plaintiff was Ann Knox, daughter of the parties. The witness stated that she had seen her father strike plaintiff on one occasion and had heard loud noises and scuffling between them on about four occasions. On cross-examination, Miss Knox testified that she had never seen her mother hit the defendant.

James F. Knox, the defendant, testified on his own behalf that he did not directly swing at the plaintiff during any of the altercations as alleged in the complaint. The witness stated that he tried to "maybe" hold her arms in the course of arguments so she would not swing at him, and "perhaps" that is how her arms were bruised. Regarding the incident of March 17, 1971, defendant stated that he did not recall what precipitated the argument but that it was after a St. Patrick's Day party.

Regarding the January 1, 1973, incident, Knox stated that he had been drinking at a New Year's Eve party and fell asleep in the back seat of the car while his wife was driving. When they arrived home, he wanted to go to sleep but plaintiff insisted on discussing his conduct at the party. An argument followed, during which plaintiff inflicted a superficial scratch on his body with a knife. Regarding the incident of May 6, 1973, the defendant stated that plaintiff became upset following a party which they attended. According to the witness, she may have tried to bump him and possibly her bruises occurred when he held her arms. The witness further testified that the parties were approximately the same size at the time of all three incidents.

Continuing his testimony, Mr. Knox stated that plaintiff had been taking pills, apparently for a thyroid and heart condition, for 15 years. She also took tranquilizers and sleeping pills. Defendant felt the sum of $900 per month for household expenses was excessive but had never figured out the operating expenses himself. Knox stated that his financial problems had caused him to cash bonds in order to support the household. He did not know if the $5,000 received from his in-laws as a down payment on the marital residence was intended as a gift but stated that they had been very generous to them through the years.

At the close of the evidence, the trial court entered judgment in favor of the plaintiff on the grounds of physical cruelty. Plaintiff was awarded the marital home, child support in the amount of $400 per month for the two children, and attorney's fees in the amount of $1,000. After the decree had been entered, the award of child support was reduced from $400 per month to $300 per month by the trial court.

The first issue raised by the defendant in this appeal is that the trial court's finding of extreme and repeated physical cruelty is against the manifest weight of the evidence. He argues that the alleged acts of cruelty complained of by the plaintiff are at best slight and do not constitute grounds for divorce.

■■ The Divorce Act provides for the dissolution of a marriage where either party has been guilty of extreme or repeated physical cruelty. (Ill. Rev. Stat. 1971, ch. 40, § 1.) Our supreme court has repeatedly stated that violence resulting in pain and bodily harm on at least two separate occasions, if proved by a preponderance of the evidence, is sufficient to establish extreme and repeated physical cruelty within the meaning of the statute. *Tuyls v. Tuyls* (1961), 21 Ill.2d 192, 171 N.E.2d 779; *Curran v. Curran* (1960), 19 Ill.2d 164, 166 N.E.2d 13.

In *Collinet v. Collinet* (1961), 31 Ill.App.2d 72, 175 N.E.2d 659, the defendant raised the same argument now before us. There, plaintiff testified that defendant had angrily slapped her on one occasion, twisted

her arm backward during an argument on another occasion, and "cracked" her across the face, grabbed and thrown her backwards during another incident. Defendant argued that these were merely slight acts of violence insufficient to meet the statutory requirements of extreme and repeated physical cruelty. In reversing the trial court's dismissal for want of equity, we acknowledged that in earlier cases references to slight acts of violence were coupled with the requirement that the conduct must endanger life and limb (see *Balfour v. Balfour* (1959), 20 Ill.App.2d 590, 156 N.E.2d 629; *Coolidge v. Coolidge* (1955), 4 Ill. App.2d 205, 124 N.E.2d 1), but found that the latter requirement was no longer necessary. We stated at page 77:

"No reference to slight acts of violence, great bodily harm, or danger to life and limb are found in our Supreme Court's most recent decisions interpreting 'extreme and repeated cruelty.' They state simply that the guilty party must on at least two separate occasions have committed acts of physical violence against his spouse resulting in pain and bodily harm, and that each case must be considered on its own facts, Tuyls v. Tuyls, 21 Ill.2d 192, 171 N.E.2d 779, including profanity and epithets accompanying attacks, showing feeling and intent. Curran v. Currran, 19 Ill.2d 164, 166 N.E.2d 13."

Similar results were reached in *Roback v. Roback* (1965), 59 Ill.App.2d 222, 207 N.E.2d 130, and *Stockman v. Stockman* (1962), 38 Ill.App.2d 186, 186 N.E.2d 547.

We believe that there was sufficient evidence in this case to support the trial court's finding that defendant committed acts of violence against the plaintiff which produced pain and bodily harm on at least two separate occcasions. Plaintiff testified that on March 17, 1971, defendant forced her on to the bed, put his knees on her arms, blackened her eye, and bruised her face and body. Plaintiff's evidence also showed that on January 1, 1973, defendant knocked her down on the sofa, kept her arms down, hit her, and caused bruises on her arms and chest. Further, the testimony was that on May 6, 1973, the defendant hit plaintiff on her arms, chest, and face, resulting in bruises on her chest and arms. Three witnesses testified on plaintiff's behalf that they saw bruises and marks on her body shortly after the foregoing incidents.

The defendant contends that the evidence was conflicting, that the parties were approximately the same size when these incidents occurred, and that he was attempting to protect himself on some occasions. This argument, however, is primarily one of credibility. The record indicates that defendant produced no corroborative testimony for his account of what transpired and that his own statements before

the court were often equivocal. The trial judge, who observed the demeanor of the witnesses and heard them testify in open court, was in a better position to determine their credibility than is a reviewing court, and his finding should not now be disturbed. *Tuyls v. Tuyls* (1961), 21 Ill.2d 192, 195, 171 N.E.2d 779, 783-84; *Haring v. Haring* (1970), 125 Ill.App.2d 116, 121, 260 N.E.2d 396, 399.

■ In view of the foregoing, we hold that the trial court's finding that defendant was guilty of extreme and repeated physical cruelty was not against the manifest weight of the evidence. Illinois courts do not require medical evidence to support a finding of extreme and repeated physical cruelty.

Secondly, defendant contends that the trial court erred in awarding the marital home to the plaintiff as alimony in gross. The court also ordered plaintiff to assume the responsibility for the mortgage payments, taxes, and other expenses. Defendant maintains that the $5,000 received from plaintiff's parents toward the purchase of the home was intended for both plaintiff and himself.

■■ Plaintiff did not allege a special equity in the complaint. Therefore, the applicable provision is section 18 of the Divorce Act, which states:

> "The court may order the husband or wife, as the case may be, to pay to the other party such sum of money, or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement in lieu of alimony, as the court deems equitable." (Ill. Rev. Stat. 1971, ch. 40, par. 19.)

Both the form of an award of alimony, whether it be periodic or in gross, and its amount rest primarily in the sound discretion of the trial court. *Canady v. Canady* (1964), 30 Ill.2d 440, 197 N.E.2d 42; *Doyle v. Doyle* (1915), 268 Ill. 96, 108 N.E. 796.

We have reviewed the record in the instant case and find no abuse of discretion in the court's award of the marital home to plaintiff as alimony in gross. As noted by the trial judge, there was evidence of defendant's violent disposition and excessive drinking. Defendant stated that he had been having financial difficulties which necessitated cashing in bonds to pay monthly expenses. The down payment for the purchase of the home was advanced by plaintiff's parents. Moreover, plaintiff had worked steadily through the years, helped to pay toward the reduction of the mortgage on the home, and intended to continue her employment so that she could assume sole responsibility for the payments on the home. Therefore, we are of the opinion that the trial judge was correct in concluding that plaintiff should be awarded the marital home in lieu of periodic alimony.

The defendant's next contention is that the court's award of $400 per month child support was excessive. The judgment for divorce provides:

"That based on the financial findings hereinabove recited defendant shall pay to the plaintiff as and for the support of the children unallocated income of FOUR HUNDRED AND NO/ 100 ($400.00) DOLLARS per month taxable to the wife and deductible by the husband. This award is predicated on Kevin continuing to live with the plaintiff and pursue his college studies."

After the decree was entered, the court reduced the award of child support from $400 to $300 per month.

■■ The amount of child support to be allowed is largely dependent upon the discretion of the trial judge, and his determination will not be set aside unless it is contrary to the manifest weight of the evidence. (*Sandberg v. Sandberg* (1973), 11 Ill.App.3d 495, 500, 297 N.E.2d 654, 657.) In general, the amount of child support to be allowed must be determined by accommodating the needs of the children with the available means of the parties. (*Everett v. Everett* (1962), 25 Ill.2d 342, 185 N.E.2d 201.) Among the factors to be considered in determining the amount of child support are: the ages of the parties; their condition of health; the property and income of the husband; separate property and income, if any, of the wife; and the station in life of the parties. *Sandberg v. Sandberg* (1973), 11 Ill.App.3d 495, 297 N.E.2d 654.

The record in the instant case indicates that plaintiff earns approximately $8,000 per year and that the defendant's annual salary is about $14,000. Plaintiff estimated the total expenses for necessaries as approximately $900 per month, an amount which defendant did not refute. There is one minor child who resides with the plaintiff. Moreover, the amount of $400 per month for child support, which was subsequently reduced to $300 per month, was contingent upon the parties' son continuing to live with the plaintiff and pursuing his college studies.

■■ In view of the relative incomes of the parties and the amount required to provide necessaries for the children, we find that the award of child support granted by the trial judge was neither excessive nor an abuse of discretion. The award of $300 is affirmed.

Finally, the defendant argues that the court's award of attorney's fees in the amount of $1,000 was excessive and against the manifest weight of the evidence. He contends that this amount should not have been awarded because no evidence was introduced as to the amount of time plaintiff's counsel expended in the preparation and trial of this matter.

Plaintiff testified at the trial that her case had been pending since

June 1973, and that she had paid her attorney $250 as a retainer fee. She then asked the court to award $2,500 as and for attorney's fees based upon the period of time she had been represented, office conferences, telephone conferences, court costs, correspondence, efforts to settle, and preparation for trial. However, the trial court awarded fees in the amount of $1,000. We believe that this award was proper.

■■ We are again presented with a question that rests largely within the sound discretion of the trial court in the absence of a clear abuse. (*Canady v. Canady* (1964), 30 Ill.2d 440, 197 N.E.2d 42.) It is undisputed that the defendant did not request a hearing on fees. Therefore, it is not error for a trial judge to rely on the experience he has acquired in the discharge of professional duties as to the value of legal services rendered (*Lauzen v. Lauzen* (1967), 81 Ill.App.2d 472, 225 N.E.2d 427; *Richheimer v. Richheimer* (1965), 59 Ill.App.2d 354, 208 N.E.2d 346), and the cases relied upon by the defendant in which a hearing on fees was requested are not applicable here.

In this case, the trial judge was aware of the lengthy proceedings in this cause. Efforts to settle the contested issues had been unsuccessful. The court, in its judgment for divorce, found that the plaintiff needed to obtain legal services in the prosecution of her cause, that she had limited means to pay her attorney, and that the sum of $1,000 was a reasonable amount for the defendant to pay as his share of her attorney's fees. After reviewing all of the facts presented, we find that there was no abuse of discretion in the court's award of $1,000 as and for plaintiff's attorney's fees.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.