JOSEPH A. HUFFMAN, JR., Plaintiff-Appellant, *v.* SHEILA Y. HUFFMAN, Defendant-Appellee.

Fifth District   No. 76-390

Opinion filed July 6, 1977.

Sprague, Sprague and Ysursa, of Belleville (John R. Sprague and Thomas M. Daley, of counsel), for appellant.

Paul M. Storment, Jr., and Timothy K. Paridon, both of Belleville, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiff, Joseph A. Huffman, Jr., appeals from a judgment of the circuit court of St. Clair County granting permanent custody of the parties' two

minor children to defendant, Sheila Huffman, and setting plaintiff's child support payments at $400 per month.

Plaintiff contends that the custody award was contrary to the manifest weight of the evidence, that the trial court erred in failing to make a report of those matters discussed at the "in camera" conference with each of the minor children, and that the trial court erred in allowing certain "expert" testimony on the question of the proper award of custody. By way of a supplemental brief, plaintiff argues that the court's modification of his monthly child support payments from $250 to $400 was likewise against the manifest weight of the evidence.

The plaintiff and defendant were married on March 4, 1961, and a divorce was granted to Joseph Huffman, Jr., on June 26, 1975, on the grounds of mental cruelty. Among other things, the agreed-upon complaint for divorce provided for the joint custody of the two minor children.

One child, Grant Huffman, was born to the couple on October 15, 1968, and the other child, Brian Huffman, was adopted shortly after his birth on March 10, 1967. During the marriage plaintiff pursued and obtained a doctor of philosophy degree in education while his wife worked. At all times relevant to this litigation he has been an instructor of child development and general psychology courses at a junior college while defendant worked as a secretary.

At the time of the divorce decree, it was agreed between the parties that they would have joint custody of the two children, this agreement being specifically incorporated into the decree of divorce. However, for a number of reasons which will be set out in greater detail later, the joint custody arrangement failed almost from the beginning. After motions by both parties asking for the permanent custody of the children and after several temporary orders which attempted to establish an acceptable and workable joint custody plan, the trial court held a lengthy hearing on April 6, 1976, to settle all issues and to finally determine the question of custody. By its subsequent order of July 14, 1976, the court granted permanent custody of the minor children to the defendant and gave plaintiff weekend and alternate holiday visitation rights. Among other things, the court ordered plaintiff to pay the sum of $400 per month as child support. Plaintiff has brought this appeal from the July 14 order.

Plaintiff first contends that the award of permanent custody to the defendant was against the manifest weight of the evidence. Conceding that the joint custody arrangement was totally unsuccessful, plaintiff makes the argument that permanent custody should depend on who was at fault in causing the joint custody arrangement to falter. In support of this position, plaintiff points to several acts of misconduct on the part of the defendant, including her grabbing and shoving the children during

custody transfers, her creation of scenes by beating on plaintiff's door and by calling the police to enforce the exercise of custody rights, and by her attempted suicide in the month of August 1975.

Defendant argues that plaintiff has been intentionally uncooperative in the custody arrangement by refusing to deliver the children at times designated by court order and this is what caused the scenes. Defendant also contends that her agreement to the divorce was procured by plaintiff's false guarantees of future reconciliation. Her attempted suicide is explained as a reaction to information that her husband was going on a family vacation with the former family babysitter who was also a student in one of plaintiff's classes.

Defendant contends that plaintiff has used his professional training and experience in child development and general psychology to influence the preference of the children. She calls attention to the testimony of Linda Barringer, who often babysat for the defendant during the day. Ms. Barringer testified that the plaintiff would drive by her house and sound his horn as soon as the children arrived there from school. In addition, she testified, the plaintiff was at school in the morning when she dropped the boys off.

The defendant also calls attention to the testimony of Phyllis Shaw, also a babysitter, who testified that the plaintiff followed immediately behind her and the boys in his car for quite a lengthy time. There was also testimony that he would drive by the children's school at recess and get their attention.

Our review of the record convinces us that plaintiff did in fact use his training and experience to influence the preference of the children. He was the plaintiff in the divorce. The defendant had no lawyer and entered her appearance. In finding the defendant guilty of mental cruelty, the decree merely recited that she was "guilty of extreme and repeated mental cruelty as defined by the divorce statutes of the State of Illinois." The decree further provided that the parties were to have joint custody of the children. The plaintiff was awarded the marital home and the furniture. Prior to the divorce the plaintiff's present wife was a student of plaintiff. She then became a babysitter in his home. Then came the divorce; then came the marriage to the babysitter.

When the plaintiff exercised his custody, the children were in the home they were accustomed to and with people they were accustomed to being with. They were also lavishly treated. When they were with the defendant, they were on a very limited budget and living in cramped quarters. In addition, plaintiff engaged in a calculated effort to gain the attention of the children while they were in the defendant's custody.

During the lengthy *in camera* proceedings conducted with each child by the trial court, the children displayed an unexplainable hostility

toward their natural mother and great affection for the plaintiff's new wife. They explained that they like it at their father's house because of the barbecues, etc. When answering questions directed by the trial judge, they exhibited a remarkable ability to field all of his questions. One of the children accused the trial judge of "testing" him.

However, assuming there was insufficient evidence to prove that plaintiff deliberately alienated the children from their mother, we still believe a man of his qualifications and experience could have asserted enough influence on them so that they would not take the hostile attitude toward their mother that they did.

■■ The first and paramount concern of the court in a child custody case is and must be the welfare and the best interests of the children. (*Anagnostopoulos v. Anagnostopoulos*, 22 Ill. App. 3d 479, 317 N.E.2d 681; *Akin v. Akin*, 109 Ill. App. 2d 150, 248 N.E.2d 829.) In making a permanent custody award the trial court is clothed with broad discretion, the exercise of which should not be disturbed unless it is against the manifest weight of the evidence. (*Maroney v. Maroney*, 109 Ill. App. 2d 162, 249 N.E.2d 871.) After reviewing the record in this case we cannot say that the trial court erred in its custody determination. The trial court intentionally allowed the introduction of a wide variety of evidence relating to the fitness of the parents and to the proper award of custody. He conducted extensive *in camera* proceedings with each of the minor children and asked numerous questions relative to the preference of the children and the allegations of the parties. His ultimate decision was thus based on a careful and patient study of a broad spectrum of evidence and the demeanor of the witnesses. We find no error in his judgment.

Plaintiff cites *Crownover v. Crownover*, 33 Ill. App. 3d 327, 337 N.E.2d 56, in support of his second contention that the trial court erred in failing to make a report of his interview of the minor children at separate *in camera* proceedings. In *Crownover* the court reversed the trial court's summary refusal to allow the testimony of an 11-year-old child and its refusal to conduct an *in camera* hearing to consider what the child would say:

> "We conclude, therefore, that while there is no absolute right to present the testimony of a child in a custody proceeding, the trial court should not summarily refuse to hear such witness on grounds such as stated by the court in this case. The court should have conducted, on its own motion, an *in camera* interview with the child and should then make a determination, after reporting to the parties the results of the *in camera* interview and the reasons for the court's determination as to what consideration would be given information developed in the *in camera* interview." (33 Ill. App. 3d 327, 330-331.)

In this case the trial court did not refuse to consider the remarks of the children. To the contrary, the court conducted two separate *in camera* hearings amounting to some 50 pages of testimony. While it is true that the court in *Crownover* stated that the trial court should state its reasons for allowing or disallowing the testimony of a child and should note which factual information would be considered by the court in its ultimate determination in the case, those conclusions have no bearing on the outcome of this case. At no point in the hearing did plaintiff request that either of the children testify; nor is there any indication in the record that plaintiff requested the trial court to furnish that factual information developed from the conference with the children which would be considered by the court in its ultimate decision. It simply appears that the trial court conducted lengthy, recorded interviews with each of the children according to the wishes of the parties. Under the facts of this case, we think the trial court not only followed but exceeded the requirements of *Crownover*.

■■ We agree with plaintiff's third contention that two of defendant's witnesses, Irma Crocken and William Curry, were not sufficiently qualified to testify as experts. We deem it unnecessary to review in detail the qualifications of these two witnesses. It is sufficient to say that their experience and training developed by defendant's trial counsel provided an insufficient basis for their broad conclusion that a mother is a superior candidate for the award of permanent custody. However, while the introduction of such testimony was technically improper, we do not believe that it was sufficient to warrant reversal in this case. Viewed by itself, the testimony is seen as surpassing the bounds of reasonableness and as possibly influencing the trial court's decision. But within the context of the overall hearing, the testimony is consistent with the trial court's decision to give broad and impartial latitude in the introduction of evidence. Many witnesses for both parties testified as to the fitness of the parents for custody. Throughout the hearing the examination and cross-examination of witnesses was almost unrestricted. Aside from the remarks of Crocken and Curry, there was clearly sufficient evidence in the record to support the trial court's decision. We thus think the introduction of the "expert" testimony was merely harmless error.

■■ Finally, plaintiff contends that the trial court's modification of his monthly child support payments from $250 to $400 was against the manifest weight of the evidence. The earlier child support obligation of $250 per month was determined by the court when the two minor children were in the defendant's custody for only two weeks each month. Plaintiff has not directly argued that a child support obligation of $400 per month for both children is unreasonable; rather, he contends that the decision was based upon insufficient facts and that an in-depth inquiry is required.

Plaintiff claims that the following factors outlined in *Knox v. Knox*, 31 Ill. App. 3d 816, 334 N.E.2d 891, as a guideline for determining the proper award of child support were never sufficiently taken into consideration:

"the ages of the parties; their condition of health; the property and income of the husband; separate property and income, if any, of the wife; and the station in life of the parties." (31 Ill. App. 3d 816, 823.)

The record in this case indicates that plaintiff, who owns or is purchasing a $34,000 home, earned at the time of the hearing approximately $21,000 a year in his position as a college professor. As a secretary, defendant had a monthly net income of $500. She testified that total expenses for necessaries when the children were in her custody ranged from $420 to $480 per month. Beyond these facts the trial court was apprised of the ages of the parties, the model and year of their automobiles, and various improvements on plaintiff's real estate. We think these facts furnished a more than adequate basis for an informed determination of the proper child support payment.

In view of the relative incomes of the parties and the amount required to provide necessaries for the children, we believe that the child support award granted by the trial judge was neither excessive nor an abuse of discretion. The award of $400 per month is accordingly affirmed.

For the foregoing reasons the judgment of the circuit court of St. Clair County granting permanent custody to the defendant with specified visitation rights in the plaintiff, and awarding $400 per month child support to defendant, is hereby affirmed.

Affirmed.

CARTER, P. J., and EBERSPACHER, J., concur.