PATRICIA ANN FIELDS, Plaintiff-Appellee, *v.* DWAYNE LEE FIELDS, Defendant-Appellant.

Fifth District    No. 77-55

Opinion filed November 7, 1977.

Bernard A. Paul, of Marion, for appellant.

Richard E. White, of Murphysboro, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

The marriage of plaintiff Patricia Fields and defendant Dwayne Fields was dissolved by a decree of divorce filed in the circuit court of Williamson County on November 10, 1976. Care, custody and control of their only child Beth Ann, two years of age at the time of the trial, was awarded to plaintiff.

■■ The defendant first contends that the trial court's award of Beth Ann to the plaintiff was error. The paramount concern in awarding the

custody of minor children to one parent or the other is the welfare and best interests of the child. A trial court has considerable discretion in determining which parent should be awarded custody consistent with the best interests of the child and a reviewing court will not disturb the trial court's judgment unless it is against the manifest weight of the evidence. (*Lane v. Lane,* 40 Ill. App. 3d 229, 352 N.E.2d 19.) Defendant contends that the award of custody of Beth Ann to plaintiff was an abuse of discretion because the court failed to consider the welfare and best interests of the child.

■■ The basis for defendant's contention is that the manifest weight of the evidence showed that plaintiff was guilty of adultery. He points out that the moral climate in which a child will be raised is an important consideration in the custody determination and argues that in view of plaintiff's alleged adultery, the award of custody to plaintiff was not in the best interests of the child. The trial court found against defendant on his counterclaim which alleged plaintiff's adultery as grounds for divorce. The evidence offered by defendant in support of this allegation was slight and it was well within the trial court's discretion to find that defendant failed to prove this charge.

■■ The next issue is whether the court's award of $150 a month for child support was against the manifest weight of the evidence. Child support awards are determined by accommodating the needs of the child with the available means of the parties. (*Knox v. Knox,* 31 Ill. App. 3d 816, 334 N.E.2d 891; *Everett v. Everett,* 25 Ill. 2d 342, 185 N.E.2d 201.) Among the factors to be considered in determining the amount of child support are the ages of the parties, their condition of health, the property and income of the husband, any separate property and income of the wife, and the station in life of the parties. *Knox v. Knox,* 31 Ill. App. 3d 816, 334 N.E.2d 891.

Shortly before the trial plaintiff began working full time as a beautician. She testified that her earnings are based on a commission and that, on the average, she earns $100 to $110 per week. The week before trial she earned $88. Plaintiff and Beth Ann live in federally subsidized housing, and at the time of trial her rent was $48 per month. She testified that her rent would be increased now that she was working fulltime and earning more money. She spends approximately $100 per month for groceries, $100 per month for nursery school, and $40 per month for gasoline. The above expenses amount to $288 per month. Plaintiff is also paying $70 per month for furniture she bought for the apartment and must pay her parents for a car they bought for her.

Defendant is a school teacher and his take-home pay is $693 per month. He testified that he makes mortgage payments of $170 per month on a home owned by the parties as joint tenants. He is making payments of $60

per month on furniture and $23 per month on a refrigerator bought by the parties on credit. Defendant is also making payments of $122 per month on a 1974 Cutlass Supreme. The balance on all these debts amounts to $17,662. Other indebtedness on which the defendant is paying amounts to $1583. Besides these expenses, defendant testified he must pay for life and car insurance, utilities, groceries and gasoline. Defendant testified that his monthly expenses amount to $630, leaving only $63 per month to meet the support obligation of $150 per month.

Defendant argues that after meeting his monthly financial obligations he is left with only $63, and that it was therefore an abuse of discretion and against the manifest weight of the evidence for the trial court to order him to pay $150 per month for child support. The trial court, however, ordered that the jointly owned property be sold and the proceeds applied to the unpaid obligations on the jointly owned property. Assuming that the proceeds will be at least equal to the amount of existing joint indebtedness, defendant will have sufficient ability to meet the child support payments.

The defendant next contends that the trial court's order finding that the home of the parties and certain personal property was owned equally by the parties was error. The trial court ordered the sale of the marital home, household furnishings, a 1974 Cutlass Supreme automobile, and all other jointly held property. Defendant asserts that he alone had equity in these properties and that the trial court's determination was against the manifest weight of the evidence. The pleadings of both parties admitted joint ownership of the marital residence and each claimed special equity in the property in question in accordance with section 17 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 18). The defendant contends, however, that plaintiff made no contribution to the acquisition of the realty. The evidence indicates otherwise. In the early years of the marriage both parties attended school and worked five evenings a week at a Sav-Mart. During this period plaintiff also worked two days a week as a beautician. After the birth of the parties' child plaintiff worked 24 hours a week. The wages of both apparently were treated as family earnings. Thus the evidence establishes a clear inference that plaintiff made a substantial contribution toward the purchase price of the house, the household furnishings and the Cutlass Supreme. Defendant did not introduce any evidence tending to rebut this evidence. In addition, the house, furniture and automobile are held subject to an apparent joint obligation of the parties to satisfy unpaid balances on the purchase price of each.

■■■ It has generally been held that where a wife has performed duties beyond those normally undertaken by a wife as homemaker or has contributed either funds or services to a husband's acquisition or

improvement of property, the wife is entitled to an equitable award of money and property roughly equivalent to her contribution. (*Everett v. Everett*, 25 Ill. 2d 342, 185 N.E.2d 201.) There was sufficient evidence in this case upon which the trial court could find that Patricial Fields had by her own efforts contributed equally to the acquisition of the property in question and was therefore entitled to a corresponding division of that property. The findings of a divorce court are generally presumed to be correct and a reviewing court will not set aside a trial court's findings unless they are clearly against the manifest weight of the evidence. (*Schaperkoetter v. Schaperkoetter*, 13 Ill. App. 3d 120, 229 N.E.2d 780; *Olson v. Olson*, 66 Ill. App. 2d 227, 213 N.E.2d 95.) We believe it was a proper exercise of the trial court's discretion to find that plaintiff had special equities equivalent to that of the defendant in a jointly owned home, household furnishings and automobile. The defendant contends that since the property in question was acquired through the joint efforts of both parties, the court was clearly authorized to adjudicate the rights of the parties to the property.

■■ Both parties conceded that if the trial court was correct in finding that the real and personal property in question belonged equally to both parties, it had the power to order the sale of the property in question in order to pay the debts incurred as a result of the marriage. If the trial court had not ordered the property sold and the debts paid, it would have been impossible for the defendant to make the child support payments ordered by the court. Thus the trial court would not have been able to effectively dispose of the principal case and do complete justice between the parties. Under these circumstances the trial court had implied or ancillary jurisdiction to order the sale of the real and personal property in question. (*Trade Bond & Mortgage Co. v. Schwartz*, 303 Ill. App. 165; 21 C.J.S. *Courts* §88, at 136-38 (1940); 20 Am. Jur. 2d *Courts* §100 (1965); *Morrow v. District of Columbia*, 417 F.2d 728 (D.C. Cir. 1969).) In *Morrow*, in discussing this subject the court said at pages 739-40:

> "In any event, the distinction between law and equity is not the crux of the matter; rather, the issue is what ancillary actions a court appropriately may take in aid of its original jurisdiction. The answer to this turns on the relationship between the original matter and the ancillary order, not the label ('equitable,' 'legal' or other) which is attached to that order.
>
> We could find no clear or systematic limitations on, or definitions of, ancillary jurisdiction. Ancillary jurisdiction arises in several contexts, and, as the First Circuit stated in *Walmac Company v. Isaacs*, 220 F.2d 108, 113—114 (1955):
>
>> '* * * At least so far as we are aware no court has ever tried to fix its limits with any degree of precision. It springs from

the equitable doctrine that a court with jurisdiction of a case may consider therein subject matter over which it would have no independent jurisdiction whenever such matter must be considered in order to do full justice. * * *'

* * *

To effectuate these purposes, and yet confine a court to proper bounds consistent with the past use of ancillary jurisdiction as discussed above, we believe that, in a situation such as the one before us, ancillary jurisdiction should attach where: (1) the ancillary matter arises from the same transaction which was the basis of the main proceeding, or arises during the course of the main matter, or is an integral part of the main matter; (2) the ancillary matter can be determined without a substantial new fact-finding proceeding; (3) determination of the ancillary matter through an ancillary order would not deprive a party of a substantial procedural or substantive right; and (4) the ancillary matter must be settled to protect the integrity of the main proceeding or to insure that the disposition in the main proceeding will not be frustrated."

For the foregoing reasons the judgment of the circuit court of Williamson County is affirmed.

Affirmed.

CARTER, P. J., and JONES, J., concur.